[No. 9069.  In Bank. — June 30, 1886.]

# J. H. ROBERTS ET AL., APPELLANTS, v. M. J. DONOVAN ET AL., RESPONDENTS.

SURETIES — DISCHARGE FROM LIABILITY — PRINCIPAL AND AGENT. — The sureties on a bond for the faithful performance of the duties of an agent are released from liability for the subsequent defaults of the agent if the principal and agent, without the knowledge or consent of the sureties, materially alter the terms of the contract of agency, or if the principal continues the agent in his employ after knowledge that he has misappropriated money coming into his hands as agent.

PLEADING — ACTION AGAINST JOINT DEBTORS — COUNTERCLAIM — CAUSE OF ACTION IN FAVOR OF ONE DEFENDANT. — In an action against two or more joint debtors to enforce their joint liability, the summons being served on all of them, one of the defendants cannot set up by way of counterclaim a cause of action existing in his favor alone against the plaintiff.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court, and the opinion of Commissioner Searls.

*George D. Shadburne,* for Appellants.

*E. P. Cole,* and *A. N. Drown,* for Respondents.

Ross, J. — As far as it goes, we are satisfied with the opinion delivered when this case was pending in Department, which will therefore stand as the opinion of the court upon the question therein discussed.

But it is proper also to decide whether the sureties upon the bond sued on were released by the conduct of the plaintiffs. The bond, as stated in the opinion already delivered, was executed by defendant Tobin as principal, and defendants Donovan and McGrath as sureties, to the plaintiffs, conditioned for the faithful performance by Tobin of a contract with plaintiffs by which he became their San Francisco agent for the sale on commission of certain brick, in such quantities as plaintiffs might deem it to their interest to furnish.

The agreement, for the faithful performance of which it is alleged the bond was executed, was of date July 29, 1878. Upon the trial in the court below, it was found as a fact "that on the ninth day of April, 1879, without the assent of either of the defendants Donovan or McGrath, the plaintiffs and defendant Tobin entered into a new agreement and contract, by which they modified, varied, altered, and changed the agreement of employment of July 29, 1878, and sued on in the complaint; and the said agreement and contract of the ninth day of April, 1879, was in writing, and was valid and binding on the said plaintiffs and defendant Tobin." The court further found that in December, 1880, an accounting was had between plaintiffs and Tobin, by which it was ascertained that the latter had appropriated to his own use, without the knowledge or consent of plaintiffs, the sum of $150, which he had collected as their agent, and that plaintiffs, knowing that fact, continued him in their employ, and failed to notify the sureties of the default; and further, that the sureties had no notice thereof until after June 23, 1881.

It was further found that in December, 1880, plaintiffs and defendant Tobin "entered into a new and binding agreement, by which plaintiffs agreed still to employ the said Tobin as their agent for the sale of bricks in the city and county of San Francisco, and to wait on him for the payment of his indebtedness to them until his commissions for the sale of bricks should liquidate the same; he, the said Tobin, agreeing to repay the said indebtedness by allowing plaintiffs to retain and keep back his commissions to an amount sufficient to liquidate the same; and said plaintiffs agreed to wait on said Tobin for the repayment of his said debt for at least one month. That said Tobin before June 23, 1881, had paid to plaintiffs all sums of money he owed them by applying his commissions on the sale of brick thereto. That the said new agreement of December, 1880, was without

the consent or knowledge of either of the defendants, Donovan or McGrath."

These acts on the part of the plaintiffs operated a release of their sureties from liability upon the bond sued on: 1. Because of the alteration of the contract made in April, 1879, without the consent of the sureties (*Victor Sewing Machine Co.* v. *Scheffler*, 61 Cal. 530); and 2. Because of the continuance by plaintiffs of Tobin in their employ with knowledge of his misappropriation of their funds,—the sureties being ignorant thereof. Where there is a continuing guaranty for the honesty of a servant, if a master discover that the servant has been guilty of dishonesty in the course of the service, and instead of dismissing, continues him in such service without the knowledge or consent of the guarantor, express or implied, he cannot afterward have recourse to the guarantor to make good any loss which may arise from the dishonesty of the servant during the subsequent service. If the dishonesty had existed before the surety became bound, and the master had concealed it, the surety would not have been liable, and the cases are the same in principle. (Brandt on Suretyship, sec. 368.)

The findings are not sufficiently definite to enable us to determine the relative rights of plaintiffs and defendant Tobin.

Judgment and order reversed, and cause remanded for a new trial.

Myrick, J., Sharpstein, J., and McKinstry, J., concurred.

The following is the opinion of Department One above referred to, rendered on the 28th of December, 1885.

Searls, C.—On the twenty-ninth day of July, 1878, plaintiffs and defendant Thomas D. Tobin entered into an agreement in writing, by which Tobin became the agent of plaintiffs in San Francisco for the sale of their

bricks, in such quantities as they might deem it for their interest to furnish, said Tobin to sell on commission, and to charge usual and customary commissions. Tobin was to account to and pay over from time to time to H. L. Miller, agent of plaintiffs, all moneys by him collected on account of bricks sold, etc.

Defendants Donovan and McGrath as sureties, and Tobin as principal, executed to plaintiffs a joint bond in the sum of ten thousand dollars gold coin, conditioned for the faithful performance by Tobin of his contract with plaintiffs.

This action is brought to recover $3662.20 on the bond for the failure by Tobin to account and pay over moneys by him averred to have been collected on sales of brick.

Defendant Donovan set up a counterclaim against plaintiffs for four thousand five hundred dollars, claimed as due Tobin on the brick transaction, and by him assigned to Donovan before suit was brought.

The cause was tried by the court, who filed written findings, upon which defendants had judgment for their costs, except defendant Donovan, who had judgment on his counterclaim for $2216.82, and costs of suit.

The cause is brought here on appeal by plaintiffs from the final judgment and from an order denying a new trial.

The trial of the cause involved an investigation of lengthy and somewhat complicated accounts, and as there was evidence tending to support the result arrived at, we cannot assume to disturb the findings of fact. This being true, the respondent does not need, and the appellants would hardly appreciate, the reasons for the conclusion at which we have arrived as to the facts were we to give them *in extenso*.

The point is made by appellant that the balance claimed to have been due to Tobin, by him assigned to Donovan, and for which judgment was rendered in favor

of the latter, was not a legitimate counterclaim in this action.

A counterclaim, to be available in an action, "must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: 1. A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action; 2. In an action arising upon contract; any other cause of action also arising upon contract and existing at the commencement of the action." (Code Civ. Proc., sec. 438.)

It must exist in favor of the defendant and against the plaintiff. (*Chase* v. *Evoy*, 58 Cal. 348.)

A defendant cannot set up a counterclaim existing in favor of another person.

The test is, whether defendant could have maintained an independent action on the demand. (*Belleau* v. *Thompson*, 33 Cal. 495.)

A surety cannot set up a counterclaim existing in favor of his principal against the plaintiff (*Gillespie* v. *Torrance*, 25 N. Y. 306); nor can a counterclaim in favor of a defendant and a stranger to the action be set up (*Hook* v. *White*, 36 Cal. 299); or a claim against the plaintiff and another person. (*Howard* v. *Shores*, 20 Cal. 277; *Hobbs* v. *Duff*, 23 Cal. 627.)

In the present case, Donovan and McGrath were joint obligors upon a bond with Tobin. The latter had a claim against plaintiffs, growing out of transactions under the contract for the faithful performance of which they had become sureties. Tobin assigned his claim to Donovan, one of the sureties, and his right to recover thereon is the precise question presented.

The term "counterclaim" is broader in its scope and meaning than "set-off," and includes not only demands which were the subject of set-off and recoupment, but

also in our state equitable demands. A set-off, prior to the code, could in most of the states only be interposed where the demand was certain, or capable of being made certain by calculation, and could not be sustained for unliquidated damages in a court of law.

The defense of recoupment was one in which the defendant was permitted, in an action upon a contract, to show that, by reason of some failure of the plaintiff on his part to perform his cross-obligations under the contract, defendant had suffered damage, which he was permitted to discount, keep back, cut off, or recoup to the extent of his damage, but not exceeding the demand of plaintiff on the same contract. This defense was allowed at law, usually, but not always, by virtue of some statutory provision; its object being to avoid circuity of action. If a defendant failed to recoup damages where he might do so, he was afterward precluded from maintaining an action therefor, as he is now by our code for counterclaims arising under subdivision 1 of section 438 of the Code of Civil Procedure. A counterclaim under said subdivision includes a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action.

It has been held in New York, under a statute precisely like our own, that the term "transaction" is a broader one than "contract." A contract is a transaction, but a transaction is not necessarily a contract. (*Xenia Branch Bank* v. *Lee*, 7 Abb. Pr. 372.)

We do not, however, deem it necessary to enter upon a discussion of the distinctions between the several cases provided for by subdivisions 1 and 2 of section 438 of the Code of Civil Procedure, for the manifest reason that the counterclaim set up by defendant Donovan must come under one or the other of those provisions; and for the purposes of the decision, it matters not which. If the counterclaim cannot be sustained, it must be for

the reason that a several judgment cannot be had between defendant Donovan and plaintiffs.

The action is brought upon the joint bond of all the defendants. Were it a joint and several bond, no difficulty could arise; for where the cause of action is several as well as joint, a several judgment may be entered without reference to the mere form of action.

So, too, when the cause of action is against several defendants jointly, a portion only of whom are served, judgment may be taken against those served, under section 414 of the Code of Civil Procedure, and proceedings may afterward be had in such cases against those not served, under section 989, etc., of the Code of Civil Procedure. And under section 1543 of the Civil Code, the release of a joint debtor does not discharge others.

It is submitted, however, that where all of several joint debtors are sued and served with process, all being equally liable, save in a few exceptional cases, of which this is not one, a several judgment cannot be entered, but the judgment, like the demand, must be joint.

Pomeroy, after discussing at considerable length the several questions arising under counterclaims, at section 761 of his work on Remedies, sums up as follows: " 1. When the defendants in an action are joint contractors, and are sued as such, no counterclaim can be made available which consists of a demand in favor of one or some of them; 2. When the defendants in an action are jointly and severally liable, although sued jointly, a counterclaim consisting of a demand in favor of one or some of them may, if otherwise without objection, be interposed."

We think this to be the true rule, applicable to the facts of the present case, and that under it the several demand of Donovan was not a proper counterclaim in the action against him and his co-defendants upon a joint demand against them all.

*Springer* v. *Dwyer*, 50 N. Y. 19, cited by counsel for

respondent, is not in conflict with the rule as stated. That was an action for a promissory note against the maker and indorsers, who were severally liable to plaintiff.

*People* v. *Cram*, 8 How. Pr. 151, was a case of joint and several liability.

*Persons* v. *Nash*, 8 How. Pr. 455, was also a case of joint and several liability, and it was expressly held that where there was a several liability, a defendant severally liable could avail himself of a set-off in his favor.

We know of no well-considered case in which it has been held that one of two or more defendants jointly, and not jointly and severally, liable, has been permitted to set up a counterclaim due to him only.

It sometimes occurs that the very facts constituting a counterclaim may be and are a defense to the action to the extent of defeating the plaintiff's right to recover. In such cases and for such purposes the doctrine we have advanced, so far as the defense is concerned, has no application.

It follows that the objection to the counterclaim interposed in the court below should have been sustained, and that the judgment and order denying a new trial should be reversed and cause remanded.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.