[S. F. No. 9833. In Bank.—January 6, 1923.]

## FRANKLIN A. KALES et al., Respondents, v. SHIRLEY HOUGHTON, Appellant.

[1] EMPLOYER AND EMPLOYEE — OBTAINING AND HANDLING OF CONSTRUCTION CONTRACTS—INTERPRETATION OF AGREEMENT OF EMPLOYMENT.—In an action for an accounting under a written agreement providing that the plaintiffs were to enter defendant's employment for a period of five years "and to exclusively give their services toward obtaining and handling of contracts to be entered into" between defendant and others for construction work, the profits and losses to be equally divided, the defendant cannot contend that the plaintiffs were not entitled to share in the performance of any contracts which they did not both obtain and handle, where the defendant during the period of plaintiffs' activities under the agreement charged the plaintiffs with one-half of the losses on certain contracts which were obtained but not handled by them, and with their proportion of defendant's office expense, which under the terms of the agreement was chargeable as "costs of administration" against the plaintiffs' work.

[2] CONTRACTS—CONSTRUCTION—ACTS OF PARTIES.—When the meaning of the language of a contract is doubtful the construction which the parties to it place upon it during the course of its execution will be adopted where the language will reasonably permit such an interpretation.

[3] EMPLOYER AND EMPLOYEE — CONSTRUCTION CONTRACTS — ACCOUNTING—OVERHEAD CHARGE ON PARTICULAR CONTRACT—FINDING.—In such action for an accounting, the failure to make a specific finding as to whether the overhead charges for costs of administration chargeable to a certain contract were to be estimated according to the oral agreement between the parties or according to the basis fixed in the original agreement as to the chargeable overhead against work in which the plaintiffs had a right to share, did not amount to a failure to find upon a material issue, since the finding as to plaintiffs' share in the net profits for the year was sufficient to sustain the judgment based thereon.

[4] ID.—STATEMENT OF ACCOUNT—SETOFF—INDIVIDUAL NOTE OF ONE OF EMPLOYEES.—Under such an agreement, the defendant in his statement of account was not entitled to offset against the sum due to both of the plaintiffs, the amount of the personal note of one of them made in the course of a transaction antedating the agreement and with which the other plaintiff had nothing to do.

[5] SETOFF—JOINT OBLIGATION—PERSONAL INDEBTEDNESS.—In the absence of insolvency or of other facts calling for the application

of the rules of equitable setoff, the personal indebtedness of one of the parties to a joint agreement or obligation cannot be availed of as a setoff so as to affect the other party to such agreement or obligation without his consent.

[6] RESCISSION—RESTORATION—EXCEPTION.—One who seeks to rescind an agreement is not bound to restore that which he would be entitled in any event to retain.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. J. Van Nostrand, Judge. Affirmed.

The facts are stated in the opinion of the court.

James P. Sweeney, Courtney L. Moore and Adair & Winder for Appellant.

Fitzgerald, Abbott & Beardsley for Respondents.

THE COURT.—This appeal is by the defendant from a judgment in the plaintiff's favor in an action for an accounting.

On or about the twelfth day of July, 1915, the plaintiffs herein and the Van Sant-Houghton Co. entered into the following written agreement:

"San Francisco, June 22, 1915.
"Messrs. Van Sant-Houghton Co.,
    "503 Market Street,
        "San Francisco, California.
"Gentlemen:

"The undersigned offer to enter your employment for the period of five years, commencing July 1, 1915, and to exclusively give their services towards obtaining and handling of contracts to be entered into between yourselves and others. This service shall exclude

"(1) All contracts to the carrying out of which your UNIT–BILT system of concrete construction is adaptable.

"(2) All contracts to the carrying out of which your pneumatic concrete Placing System is adaptable.

"(3) All work in Alameda County.

"(4) All railroad work.

"This service shall particularly include:

"(1) All residence work outside of Alameda County.

"(2)   More particularly all work in the Bay Counties not specifically mentioned as excluded above.

"(3)   Any contracts for construction work not excluded above where same are undertaken with the consent of Shirley Houghton and R. H. Van Sant, Jr.

"(4)   By special agreement between the parties concerned, work may be undertaken in the territory or under the classifications excluded above.

"Every twelve months, a statement of profits and loss shall be drawn up on the work closed during the preceding twelve months, and we shall be entitled to draw out one-half of our share of the profits then earned, the balance to remain with Van Sant-Houghton Co. as protection against any possible loss during the ensuing year.

"The division of the profits or losses shall be 50% to Van Sant-Houghton Co. and 50% to ourselves.

"During the period of the year from July 1, 1915, to June 30, 1916, Van Sant-Houghton Co. are to advance to us the sum of $500.00 at the end of each month. These advances are to be charged against our share of the profits during our period of service.

"Any additional advances after June 30, 1916, that may be agreed upon must be warranted by the work completed or then in the course of construction.

"The costs of administration which are chargeable against us will be based on that portion the overhead of the office of Van Sant-Houghton Co. which is chargeable against our work.

"In the event of the death of either of the undersigned, this agreement may be terminated at the option of Van Sant-Houghton Co.

"FRANKLIN A. KALES.

"JASPER S. CONNELL.

"Accepted this 12th day of July, 1915.

"VAN SANT-HOUGHTON Co.

"By SHIRLEY HOUGHTON and

"R. H. VAN SANT, JR."

At the time of entering into this agreement the Van Sant-Houghton Co. was, and for several years prior thereto, had been engaged in business as construction engineers with headquarters of the same in San Francisco, but with its operations, which were quite extensive, reaching into several

other states. The plaintiffs herein were also engineers of considerable past experience in similar lines of work and had in fact been in the employment of the said firm, Van Sant-Houghton Co., prior to the execution of the written agreement above set forth. A few months after its execution Mr. Van Sant transferred all of his interest in the firm to his associate, the defendant herein, who thereupon assumed all of the obligations and became entitled to all of the benefits of the foregoing agreement. The service of the plaintiffs herein began on July 1, 1915, according to the terms of said agreement, and were to continue for the period of five years thereafter. The activities of the respective parties under said agreement actually continued for a period of little over two years and eight months when discords having arisen between them over the state of their accounts, the plaintiffs after some efforts made to arrange a compromise of these difficulties, left defendant's employ on or about March 9, 1918, and then undertook to repudiate and rescind said agreement. On March 25, 1918, they commenced the present action for an accounting, alleging in substance that the defendant had failed and neglected to furnish them with the statements of account provided for in said agreement, and to collect the account for and pay over to them, sums from time to time due thereon. The defendant demurred to the plaintiffs' complaint unsuccessfully and then answered, admitting the execution of said agreement but denying any breach thereof upon his part and that any sum whatever was due said plaintiffs thereunder. He also filed a cross-complaint against said plaintiffs setting forth said agreement and alleging that said plaintiffs had without cause made default in the terms and conditions thereof to be by them performed, whereby the defendant and cross-complainant had sustained damages in the sum of $18,000, for which he prayed judgment. Plaintiffs answered said cross-complaint with denials of the allegations thereof. The cause went to trial before the court sitting without a jury upon the issues thus joined, at the conclusion of which the court made and filed its findings of fact and conclusions of law; in the first paragraph of its said findings the trial court found generally that the first five paragraphs of the complaint having reference to the making of said agreement and to the defendant's alleged

breach thereof, were true and that the facts were as alleged therein. The trial court then proceeded to make specific findings as to the amount due to said plaintiffs, and for which they were entitled, stating that said amount was in excess of the sum of $20,000, which the defendant had refused and neglected to pay. The court then proceeded in its findings to go into further and more specific details as to the sources from which it derived the conclusion that an amount in excess of the above sum was due and unpaid the plaintiffs. It is certain of these specific findings which the defendant particularly assails on this appeal as unsupported by the evidence in the case.

[1] The primary contention of appellant in this regard has to do with the interpretation which the trial court placed upon said agreement as affecting its findings as to the several amounts due the plaintiffs upon certain construction work undertaken thereunder by the defendant. It is the appellant's contention that the plaintiffs were entitled to share in the performance of no construction contracts which they did not "obtain and handle." This contention is based upon the phrasing of the first paragraph of the plaintiffs' offer, which reads as follows:

"The undersigned offer to enter your employment for the period of five years, commencing July 1, 1915, and to exclusively give their services towards obtaining and handling of contracts to be entered into between yourselves and others."

It is the appellant's claim that the words "obtain and handle" in the foregoing paragraph of the plaintiffs' accepted offer are to be used in the conjunctive in their application to the succeeding provisions there. There are several sufficient reasons why his interpretation should not be placed upon these words. To so interpret them would be to allow the plaintiffs no part in the performance of any construction contract which they obtained and turned over to said defendant, unless they also "handled" the construction work thereon. It would also lead to the denial of any share in the performance of any construction work of the defendant upon which the plaintiffs worked but the contract for which they did not "obtain" or assist in obtaining. The result would be that the plaintiffs' motive and advantage in entering into the contract at all would be

largely taken away, as well as any motive or advantage
to them to exert themselves in obtaining construction con-
tracts for their employer which they were not to handle,
or for handling construction work or contracts which they
did not assist in obtaining. A further reason for denying
to this clause in the agreement the interpretation which the
defendant now claims for it, is to be found in the inter-
pretation which the parties themselves placed upon it at the
time and in respect to several construction contracts which
were obtained and handled during the period of plaintiffs'
activities under their said agreement. In the case of the
Sperry flour contract the evidence shows that this con-
tract was obtained by or through the efforts of the plaintiff
Kales, but that practically no work was done by either
of said plaintiffs in handling the construction work thereon.
This contract resulted in a loss, and the evidence shows
that the defendant charged fifty per cent of said loss to
the plaintiffs under the provision of said agreement, which
provides for a sharing of the losses as well as profits upon
work undertaken during the term of said agreement.
Another example is that of the contract for a foundry
building for the Union Iron Works which the plaintiff
Kales also obtained, but which neither of the plaintiffs
handled, and upon which there also was a loss, one-half
of which the defendant charged to the plaintiffs' account.
Still another example of the defendant's conduct in the
interpretation of said phrase is to be found in the so-called
Floriston contract, in the execution of which there was a
profit, fifty per cent of which the trial court awarded to the
plaintiffs. There is a conflict in the evidence as to whether
the plaintiffs obtained this contract, which conflict the trial
court resolved in the plaintiffs' favor. The appellant con-
cedes that by reason of such conflict and of the court's con-
clusion thereon he cannot now attack that portion of the
finding of the trial court; but he insists that the trial court
was in error in making any award to the plaintiffs thereon
for the reason that the undisputed evidence was that the
plaintiffs did not handle said job. The evidence, however,
divulges that the defendant charged the plaintiffs with
their proportion of the agreed expense of the San Francisco
office, which under the terms of the agreement was charge-
able as "costs of administration" against the plaintiffs'

work. This could only have been done upon the theory that the plaintiffs would ultimately be entitled to share in the performance of the Floriston contract, although they did not ''handle'' the work upon said contract. The defendant, having thus placed an interpretation upon said agreement which operated to his benefit, cannot be heard to deny the same interpretation thereof when it would operate to the plaintiffs' benefit. **[2]** It is a well-setted rule of law that when the meaning of the language of a contract is doubtful the construction which the parties to it place upon it during the course of its execution will be adopted where the language will reasonably permit such an interpretation. (*Hill* v. *McKay,* 94 Cal. 5 [29 Pac. 406]; *Keith* v. *Electrical Engineering Co.,* 136 Cal. 178 [68 Pac. 598]; *Kennedy* v. *Lee,* 147 Cal. 596 [82 Pac. 257].) We are of the opinion, therefore, that the trial court was not in error in interpreting this agreement as to allow the plaintiffs their due share of the profits upon all construction work covered by the terms of said agreement which they assisted in obtaining but did not handle, or which they handled but did not obtain.

**[3]** The next contention of the appellant is that the trial court was in error as to its conclusion as to the proper basis for the ascertainment and distribution of the ''costs of administration'' between the parties in respect to construction work in which the parties were to share profits or losses under the terms of said agreement. The provision in said agreement relating to this subject reads as follows:

''The costs of administration which are chargeable against us will be based on that portion the overhead of the office of Van Sant-Houghton Co. which is chargeable against our work.''

The importance of interpreting and applying the foregoing provisions in the agreement consists in the fact that every twelve months during the term of the agreement a statement of profit and loss was to be drawn up as to the work closed during the preceding twelve months upon which the plaintiffs were entitled to draw one-half of their share of the profits therein shown to have been earned, on the basis of a fifty per cent division of said profits; the plaintiffs' other half thereof to remain with the defendant as a

protection against possible loss during the ensuing year. The undisputed evidence shows that a statement was prepared and presented by the defendant's bookkeepers at or about the close of the first twelve months of the operations of the parties under said agreement, which statement showed that during said year the Houghton Company had handled work in which the plaintiffs were not interested, aggregating $470,761.39, and that during the same period the Houghton Company had handled work in which the plaintiffs were interested aggregating $173,845.80. Upon the basis of these figures and under what would seem to be a reasonable interpretation of the somewhat vague provisions of the clause above quoted as to the division of overhead expense, the plaintiffs should be charged with twenty-seven per cent of such overhead and the defendants with seventy-three per cent thereof. This first statement was prepared upon this basis and was apparently accepted by the parties and by the court as exemplifying the proper interpretation of the above-quoted provision. The trial court found that this first statement as thus agreed to constituted a stated account between the parties and with this finding both parties apparently agree. This first statement, however, contained one specification as to overhead charges upon a particular piece of work then in progress which was to be prolific of trouble between the parties in their later accountings: The item referred to reads as follows: "Overhead Ocean Falls, $40.00, 2 mos—$120.00." The construction contract thus referred to was one which had been entered into in the early part of the year 1916 between the Pacific Mills, Ltd., and the defendant, the work upon which was to be done at Ocean Falls, British Columbia. This particular contract differed from the other construction contracts in which the parties had become interested during the life of their agreement in the respect that while the plaintiffs were to be the superintendents in charge of the work at Ocean Falls, neither they nor the defendant were to furnish any of the labor, materials or capital to be employed in the construction part of said work. All of this with the exception of the superintendency of the job was to be supplied by the Pacific Mills, Ltd., who were to furnish all of the clerical and office work and do all of the bookkeeping connected with said job. The sole connection which the parties

hereto had with said work was that of superintending the job which was to be done by the respondents herein as employees of the defendant herein and for which there was to be fees on the basis of five per cent of the cost of the work as the same proceeded. Payments on account of these fees were to be made monthly to the defendant whose sole overhead expense in connection with said contract was that of receiving and crediting the monthly check for the fees earned through the respondents' superintendency during the preceding month. When the time arrived for the preparation of the first annual statement the question arose between the parties hereto as to the basis of overhead charge on account of this contract upon which at that time about $300,000 worth of work had been done and upon which fees aggregating $15,000 had been received by the defendant. The parties hereto are in substantial agreement in their evidence as to the basis of overhead charge which was agreed upon between them with relation to this particular contract. Mr. Keating, the defendant's office manager at San Francisco, testified upon that subject as follows:

"Why you see we had been discussing this overhead matter for weeks, and possibly months, and after Mr. Kales and I had become rather peeved at each other, Kales said, 'It doesn't make any difference what you say, Keating, I will settle with Mr. Houghton, and fix it up with him'; and that is what they did, fixed it up between them; then the question of the proper charge of Ocean Falls overhead came up, and Mr. Houghton seemed to think it ought to be about $75.00 and Mr. Kales thought it should be about $40 per month. And he asked me if I thought $40.00 would cover it, and I said I did not know. As a matter of fact I said we do not know what the overhead has been, there was not very much done up there, and we have no way of gauging overhead up there, and then decided to let it go at $40 per month."

Mr. Kales testified upon the same subject that "It was finally agreed upon that my contention was right and an arbitrary amount of $40 per month was finally agreed upon and charged to the Houghton Construction Co. in San Francisco against Ocean Falls account." He further testifies that "$40.00 per month was finally agreed upon by all parties and accepted as the legitimate overhead to be charged

against the Ocean Falls work.'' This was accordingly done in the first statement above referred to, which explains the item therein referring to the Ocean Falls work. The second annual statement between the parties hereto was delayed until December, 1917, but was made as of the date of July 1, 1917. In the several statements as made up by the defendant and presented to the plaintiffs in December, 1917, it appeared that the total amount of construction work undertaken by the defendant and upon which the plaintiffs were entitled to a share in the profits was $2,364,884.20 and that the construction work undertaken by the defendant in which the plaintiffs were not entitled to share was $1,135,435.76. The percentage from these figures upon which the plaintiff estimated the proportionate charge on account of overhead expense was 68½ per cent to the plaintiffs and 31½ per cent to the defendant. In presenting these figures and making this estimate and charge the defendant included the Ocean Falls contract, the work upon which alone aggregated $2,364,884.20. In making up this second statement the defendant ignored the previous arrangement between the parties whereby the overhead charge was to be made against the Ocean Falls contract at $40 per month and undertook to charge the plaintiffs with overhead expenses of administration upon the whole amount of work according to the foregoing percentages, which resulted in a charge of approximately $20,000 against the plaintiffs on account of overhead expense upon the Ocean Falls job. When this second statement embracing this charge was presented to the plaintiffs in December, 1917, they objected to the same upon the ground that the foregoing was an erroneous charge, and that the only amount chargeable as overhead to the Ocean Falls job was that of $40 per month as originally agreed upon between the parties. There were certain other objections to this statement which will be considered later. After considerable dispute and much conflict in the evidence as to what actually occurred between the parties during such dispute, a tentative offer of compromise was made by Mr. Connell, representing the plaintiffs, by the terms of which he appears to have been willing to waive the objection to the overhead charge against the Ocean Falls account and also to waive certain other objections to said statement provided a cash payment of the

amount shown to be due the plaintiffs thereon was immediately made. Some comparatively small payments were made by the defendant pursuant to this tentative offer of settlement, but after considerable effort on the plaintiffs' part to obtain the full settlement thus tentatively agreed upon the plaintiffs in the month of April, 1918, left the defendant's employ, withdrew their offer of compromise, gave notice of a rescission of their agreement and commenced the present action for an accounting. Upon the foregoing facts and with relation to the second statement made by the defendant the trial court did not make a specific finding as to whether the overhead charges for costs of administration chargeable to the Ocean Falls contract were to be estimated according to the oral agreement between the parties providing for a charge of $40 a month as overhead against said job, or according to the basis fixed in the original agreement between the parties as to the chargeable overhead against work in which the plaintiffs had a right to share; but the trial court made findings upon the ultimate fact of the net amount to which the plaintiffs were entitled as their share of the profits of the business covered by said second statement of account, and this finding is obviously based upon the implied conclusion of the trial court that the said oral adjustment between the parties of the amount of overhead chargeable to the Ocean Falls job was that calculated upon the basis of said oral agreement. The appellant herein in respect to said finding of the trial court makes two contentions, the first being that by reason of the failure of the trial court to make a specific finding as to the scope and effect of said oral agreement amounts to a failure to find upon a material issue for which the judgment must be reversed, and the second being that the evidence is insufficient to support the general finding of the trial court as to the net amount to which the plaintiffs are entitled upon the work covered by said second statement of account. With respect to the first of these contentions we are of the opinion that the finding of the trial court as to the ultimate fact of the plaintiffs' due share in the net profits for the year covered by said second statement of account, involving as it does the court's implied conclusion regarding the probative facts upon which to predicate its express conclusion as to the ultimate fact, is sufficient to sustain the

judgment based upon such finding. As to the appellant's second contention that the court's said finding of the ultimate fact is unsupported by the evidence in the case, his conclusion in that regard rests upon his claim that the undisputed evidence shows that the arrangement between the parties as to the agreed basis of $40 per month or as an arbitrary overhead charge for costs of administration to be made against the Ocean Falls contract, was a merely temporary arrangement made in the earlier stages of the work being done under said contract for convenience in making up the defendant's first statement of account, and that it was never the intention of the parties that such arrangement should be given application to the entire work to be done during the execution of said contract. We are unable to give our assent to this contention since an examination of the record sufficiently shows that there is substantial evidence upholding the implied finding of the trial court. The Ocean Falls contract was entered into in January, 1916. It was unique among the construction contracts of the defendant during the period of his agreement with the plaintiffs in the respect that there were to be and were practically no overhead expense for costs of administration to be incurred during the execution of this contract. At the time, in June, 1916, that the parties entered into their oral arrangement as to the adoption of an arbitrary overhead charge of $40 per month as applicable to this particular contract, about $800,000 worth of work had been reported to the defendant as having been done by the Pacific Mills, Ltd., which was doing the construction work thereon under the plaintiffs' superintendency. There was therefore no apparent reason for the making of a mere temporary arrangement between the parties hereto as to an arbitrary overhead charge to be made against said contract, neither was there anything in the arrangement as to such arbitrary charge as testified to by all of the parties thereto to indicate that the adjustment of overhead thus to be made was temporary. It would seem, in fact, to have been an altogether equitable arrangement in view of the fact that there was to be no overhead costs of administration in the course of the performance of their part of said contract by the parties herein concerned; while on the contrary it would appear quite inequi-

table for the defendant herein to have been permitted to charge against the plaintiffs' share in the profits of said contract over $20,000 of overhead costs of administration which he had not incurred or expended. It was doubtless these considerations which moved the trial court to arrive at the conclusion that the arrangement between the parties as the arbitrary overhead charge of $40 per month, applied during the early stages of this particular piece of work, was intended by them to be given application to the entire period of execution of the Ocean Falls work. We are not disposed, therefore, to disturb the ultimate findings and conclusions of the trial court in this regard.

[4] The appellant makes the further contention that the trial court was in error in its refusal to allow the defendant in his said second statement of account to offset against the sum shown therein to be due to both of these plaintiffs, the amount of $2,538.60 which he claimed to be due him on account of the personal note of Mr. Kales, one of said plaintiffs, made by him to the defendant in the course of a transaction antedating the agreement between the parties hereto and with which Mr. Connell, the other of the plaintiffs herein, had nothing to do. The evidence shows that Mr. Connell objected to the making of said offset in said second statement of account and that he persisted in said objection between the time of the rendition of said statement of account and the final breach between the parties a few months later, except as he was willing by way of compromise to waive said objection in case an immediate payment of the balance to be paid upon such account would be made. The appellant insists that he was lawfully entitled to make such offset and to have the same allowed, but such is not the law applicable to such a situation. [5] The authorities appear to be uniform that in the absence of insolvency or of other facts calling for the application of the rules of equitable setoff, the personal indebtedness of one of the parties to a joint agreement or obligation cannot be availed of as a setoff so as to affect the other party to such agreement or obligation without his consent. (*Collins* v. *Butler,* 14 Cal. 223; *Roberts* v. *Donovan,* 70 Cal. 108 [9 Pac. 180, 11 Pac. 599]; *McDonald* v. *Poole,* 113 Cal. 437 [45 Pac. 702].) The appellant does not dispute this rule but insists that the plaintiff, Connell,

consented to said offset. This contention is based in the
main upon the appellant's next contention that the acts
and conduct of the plaintiffs subsequent to the presenta-
tion of the defendant's said second statement of account
embracing said offset rendered the same a stated account.
Without attempting to review in detail the evidence in the
case relating to the acts and conduct of the parties in their
conference and correspondence between December, 1917,
and April, 1918, when the final break occurred, we are
satisfied that the finding of the trial court that said second
statement of account never took on the quality of a stated
account finds substantial support in the evidence, and that
the contention of the appellant to the contrary is without
substantial merit. We reach the same conclusion as to the
appellant's further contention that the plaintiffs were not
entitled to withdraw from said compromise agreement and
work a rescission of the same at the time early in April,
1918, that they attempted to do so, for the reasons, either
that there had been no breach of said agreement of com-
promise on the part of the defendant justifying such
rescission, or that the plaintiffs had not acted promptly
in making the same, or that the plaintiffs, at the time they
did so rescind, were not entitled to do without returning
the moneys which they had been paid by the defendant
on account of said compromise agreement. The evidence
in the case, we think, sufficiently shows that the defend-
ant did not perform his part of said proposed compromise;
that the plaintiffs during the months between December,
1917, and April, 1918, were diligently seeking to prevail
upon him to make such performance, and hence cannot be
held to have waived during that brief period their right of
withdrawal from such compromise. The evidence further
shows that whatever payments the defendant made to or on
account of the said plaintiffs, or either of them, during
that period, amounted in the aggregate to less than the
amount which was actually due the plaintiffs in any event.

[6] The rule upon that subject is well settled, to the
effect that one who seeks to rescind an agreement is not
bound to restore that which he would be entitled in any
event to retain. (Corpus Juris, p. 1210, sec. 97; *Richards*
v. *Fraser*, 122 Cal. 456 [55 Pac. 246]; *Gatje* v. *Armstrong*,
145 Cal. 370, [78 Pac. 872].)

As to the appellant's final contention that the trial court was not entitled to allow interest upon the plaintiff's judgment: It is based wholly upon his claim that the plaintiffs were not entitled to any judgment in their favor and hence were not entitled to any interest thereon. The trial court having correctly, as we conclude, found in the plaintiffs' favor as to the principal amount they are entitled to recover under their within agreement with the defendant, it follows that they were entitled to interest upon the several sums which make up in the aggregate the amount found due from the dates when the same became payable at the legal rate under section 3287 of the Civil Code.

The judgment is affirmed.

Shaw, C. J., Lawlor, J., Lennon, J., and Waste, J., concurred.