[Civ. No. 4180. First Appellate District, Division Two.—August 9, 1922.]

ANDREW POE GAVER, Respondent, v. WILLIAM H. EARLY, Appellant.

[1] ACCOUNTING—FRAUD—GUARDIANSHIP ACCOUNTS—PLEADING.— In an action for an accounting based on fraud in the rendition of guardianship accounts, the claim being that moneys were received which were not accounted for, it is not necessary, as against a general demurrer, to specifically designate the items claimed to have been omitted.

[2] ID.—GUARDIAN AND WARD—DISCOVERY OF FRAUD—STATUTE OF LIMITATIONS.—A ward is not bound to make outside inquiries, but is entitled to rely on the assumption that his guardian and the latter's attorney will treat him fairly, and where his action for an account-

---

2. Lapse of time as affecting right to open account or settlement of guardian, note, Ann. Cas. 1917A, 648.

ing is commenced within one year after making the discovery of alleged shortages, such action is not barred by the statute of limitations.

[3] ID.—EXISTENCE OF CLAIMS—ABSENCE OF KNOWLEDGE—RELEASES.— Releases signed by plaintiff, following the settling of the last account of the defendant guardian, wherein the latter and her attorney were formally discharged, did not operate to discharge either of them from claims in favor of plaintiff which he did not know or suspect existed at the time he executed the releases.

[4] ID.—ATTORNEY AND CLIENT—FORMER EMPLOYMENT OF PLAINTIFF'S ATTORNEY BY DEFENDANT.—The fact that shortly before plaintiff's action for an accounting was commenced, and at a time when the defendant attorney was the attorney for the defendant guardian, plaintiff's attorney was a paid clerk in the office of the defendant attorney did not estop plaintiff's attorney from subsequently accepting such employment from plaintiff and from taking charge of the litigation against the defendants.

[5] ID.—FRAUD—EVIDENCE.—In this action for an accounting based on fraud in the rendition of guardianship accounts, the claim being that moneys were received by the defendants, plaintiff's former guardian and the latter's attorney, which were not accounted for, the evidence was sufficient to justify the finding of the trial court that the defendant attorney had been guilty of fraud.

[6] ID.—EVIDENCE—ADMISSION OF BANK PASS-BOOK.—In such action, in which the defendants were charged with a given sum as a stock dividend received from a certain bank, the trial court did not commit error in admitting in evidence the pass-book on such bank in which such item appeared, although it was not shown that the defendant guardian had ever had such pass-book in her possession or had any knowledge of such item, where it was shown that such pass-book had been in the possession of the defendant attorney nearly all of the time.

[7] ID. — PROPOUNDING OF QUESTIONS BY TRIAL JUDGE — DECISION OF CASE BEFORE SUBMISSION—RECORD.—The fact that as the trial proceeded the judge presiding at the trial propounded many questions to witnesses and made many statements to counsel of and concerning his impressions regarding the proof introduced will not justify a reversal on the ground that the trial court had decided the case, or at least parts of it, before the case had been finally submitted, where the record shows that the trial judge worked most patiently to develop all the facts and gave each particle of testimony full consideration without regard to any of the remarks that were made by him during the progress of the case.

APPEAL from a judgment of the Superior Court of Sonoma County. A. B. McKenzie, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

R. P. Henshall and Nat Schmulowitz for Appellant.

A. H. Crook, W. F. Cowan and R. C. Young for Re-spondent.

STURTEVANT, J.—The plaintiff brought an action against the defendants for an accounting. Judgment went for the plaintiff. The defendant W. H. Early appealed from the judgment under section 953a of the Code of Civil Procedure.

The record includes everything and it is very long, in-cluding upward of 2,000 pages of typewritten manuscript. It shows that Andrew P. Gaver, Sr., died testate leaving him surviving one daughter and one son, a minor, who has since attained his majority and who is the plaintiff in this case. By the terms of his will the father named the defendant, Ellen Gaston, his sister, as executrix of his will and requested her to name W. H. Early as her attorney for herself as executrix. After her brother's death Mrs. Gaston took out letters, and on November 29, 1909, she also took out letters of guardianship over the person and estate of the plaintiff, then a minor. In each proceeding she em-ployed W. H. Early as her attorney. The proceedings in probate in the matter of the estate of the father were so conducted that a decree settling the final account and distributing the estate was rendered May 8, 1911. No in-ventory in the guardianship proceeding was filed until No-vember 10, 1911. About two months later, January 10, 1912, the first account in the guardianship proceedings was filed. It was approved by order of court January 22, 1912. The second account was filed July 3, 1913, and was approved July 14, 1913. The third account was filed March 12, 1914, and was approved March 30, 1914. The fourth and final account was filed September 16, 1914, and was approved September 28, 1914. By the decree of distribution real property comprising eleven tracts and personal property consisting of cash, stocks, mortgages, etc., were distributed to the two children. The securities were of such a nature that they were falling due, were collected, and the pro-

ceeds were reinvested from time to time continuously from the date of the father's death until the date of the alleged settlement between this plaintiff and the defendants. The inventories, the accounts, and the decrees were so drawn that one cannot trace from one paper to another each of the items set forth. At the time of her appointment as guardian Mrs. Gaston was seventy-seven years of age or thereabouts. She did not actively take up her duties as guardian, but her attorney, the defendant, Mr. Early, took up the actual management of the ward's affairs and attended to the details. Pending the guardianship proceedings matters were carried on as though Mr. Early was attorney for the ward. In that way they transacted the business. When the minor attained his majority, he and Mr. Early went over the final account and thereafter the same was presented to the court and approved. At no time did Mrs. Gaston or Mr. Early keep formal book accounts, and the matter of settling the last account was not free from difficulties. Nevertheless, an account was prepared and the plaintiff signed a written application asking the court to allow the account. About four months later the plaintiff signed a formal release discharging Mrs. Gaston and also discharging Mr. Early. A little later the plaintiff left for Ann Arbor, Michigan, to attend college. While he was away Mr. Early acted as his financial agent and, during a part of the time, held the plaintiff's power of attorney. One of the last transactions between Mr. Early and the plaintiff occurred in 1916–17. That matter gave rise to a dispute which caused the plaintiff to have an accountant make a full examination of his accounts. One result of that examination was that the plaintiff obtained such information which led him to believe that he had not received from his guardian and her attorney all of the moneys which they had received for his account. He made a demand for a further accounting, it was refused, and the plaintiff brought this action.

The plaintiff pleaded his cause of action in two counts. In the first count he pleaded a cause of action as based on a mutual mistake. In the second count he pleaded a cause of action as based on fraud. The trial court rested its judgment on the second count. Therefore, we shall take up that count only. The plaintiff alleged the facts which

we have set forth. In the charging part of his pleading
he alleged an attack on each one of the accounts filed in
the guardianship proceedings. Each attack was similarly
worded except as to dates and amounts. One attack was:
"That thereafter and during the period of time beginning
with the first day of January, 1912, and ending with the
thirty-first day of December, 1912, both dates inclusive,
there was paid to said defendants, and they did receive,
the sum of $10,706.01, for and on account of said estate
of said plaintiff then a minor, which fact said defendants
and each of them well knew; that notwithstanding said
knowledge on the part of said defendants, and for the pur-
pose of fraudulently concealing the true facts as to said
moneys paid and received as aforesaid from said court and
said plaintiff, and for the purpose of fraudulently diverting
a portion of said last mentioned sum of money to their
own use and benefit, and for the purpose of fraudulently
procuring and obtaining an order of said court approving
and allowing what purported to be the account of said de-
fendant Ellen Gaston as guardian aforesaid covering said
last mentioned period and by them filed in that behalf, as
hereinafter more fully appears, said defendants did, on or
about the third day of July, 1913, prepare and file in said
court and in the matter of said estate of said minor an
account purporting to be the account of said defendant
Ellen Gaston as guardian aforesaid covering said last-men-
tioned period, wherein they did set forth, allege and ac-
count for the sum of $7,915.97 thereof, and no more, and
did intentionally and fraudulently, and for the purposes
aforesaid, conceal, fail to report and account for the sum
of $2,790.14 thereof; that thereafter and on or about the
fourteenth day of July, 1913, and by reason of said fraudu-
lent acts and conduct of said defendants, and not other-
wise, said court did approve and allow said account so filed,
which said order remains in full force and effect and has
not been appealed from, vacated or set aside." In this
manner the plaintiff pleaded that the defendants had re-
ceived and had not accounted for the total sum of
$31,324.53. [1] The defendants claim that the complaint
was insufficient because it did not specifically designate the
items which had been omitted. Neither defendant inter-
posed a demurrer to the complaint on the ground that for

the reason stated the complaint was ambiguous, etc. Each defendant did interpose a general demurrer. We think that the complaint was not vulnerable to a general demurrer. The argument of the appellant is that he should have been advised by the plaintiff's complaint as to each item which the plaintiff claimed had been omitted from the accounts which had been prepared, filed and settled. If the plaintiff had been in a position which enabled him to so frame his pleading he would have been able to adopt a count as for money had and received. But under the facts it is patent that he was wholly unable to do so. When in such an action as the instant case the plaintiff is claiming that overcharges have been made, the rule contended for by the appellant may have application, but where, as here, no claim is based on an overcharge, but the claim is made that moneys were received which were not accounted for, the rule is not so strict. Again, the defendants claim that the plaintiff did not sufficiently allege the facts showing extrinsic fraud and the defendant cites and relies on such cases as *Pico* v. *Cohn*, 91 Cal. 129 [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac. 537], and *Fealey* v. *Fealey*, 104 Cal. 354 [43 Am. St. Rep. 111, 38 Pac. 49]. Those cases did not involve a fiduciary relation. When that relation is involved a higher duty rests on the defendant and his liability for misrepresentations or concealment will more readily be examined by the courts than in other cases. (*Sohler* v. *Sohler*, 135 Cal. 323 [87 Am. St. Rep. 98, 67 Pac. 282]; *Aldrich* v. *Barton*, 138 Cal. 220 [94 Am. St. Rep. 43, 71 Pac. 169]; *Silva* v. *Santos*, 138 Cal. 536 [71 Pac. 703]; *Tracy* v. *Muir*, 151 Cal. 363, 372 [121 Am. St. Rep. 117, 90 Pac. 832].)

[2] The defendants claimed the action was barred by the statute of limitations. The very gist of the action is the alleged fraud of the defendants. The plaintiff was not bound to make outside inquiries, but was entitled to rely on the assumption that the defendants would treat him fairly. He was not bound to commence an action until he discovered facts showing that he had been treated otherwise. He commenced his action within one year after making the discovery of the alleged shortages. His action was commenced in time.

The plaintiff called Mr. Early as a witness and examined him as to his acts, statements, etc., but did not examine him as to any conversation which he had had with, or as to any communication which he had received from his client, Mrs. Gaston. The trial court did not commit an error in allowing him to be examined as a witness on the subjects on which he was examined.

[3] The releases, which we referred to in stating the facts, were executed by the plaintiff before he made his alleged discovery. Those releases did not operate to .discharge the defendants or either of them from claims in favor of the plaintiff which the plaintiff did not know or suspect existed at the time he executed the releases. (Civ. Code, sec. 1542.)

[4] At one time shortly before this action was commenced, and at a time when the defendant Early was attorney for the defendant Gaston, this plaintiff's attorney was a paid clerk in the office of the defendant Early. The fact of such employment did not disqualify this plaintiff's attorney from subsequently accepting employment from this plaintiff and from taking charge of this litigation. The maintenance of the action under such facts is not against public policy.

[5] This brings us to the attack which directly involves the merits of the litigation and which the appellant presents from several angles. As stated above, the gist of the plaintiff's cause of action was fraud, together with a prayer for an accounting. There was no evidence, and the trial court did not find, that Mrs. Gaston personally was guilty of fraud. She was negligent, and so was Mr. Early. He admitted as much, but defended the action on the claim that there was no shortage. During the trial the plaintiff assumed the burden and introduced evidence to prove fraud on the part of the defendant Early. Assuming that different minds might take different views of the record, it is sufficient to state that there are such facts shown in the record as tend to support the findings of the trial court. The trial court found that the defendant Early had been guilty of fraud. It cannot be said that that finding is wholly without support. One would expect, in such a record, to find a formal statement of the account. In that account one would expect to find an itemized list of moneys re-

ceived, etc., and an itemized list of expenditures, and a balance struck. In this record there is no such statement. But our attention has not been called to the fact that any formal request was made of the trial court asking it to make such a formal statement, nor to the refusal of the trial court so to do. In its findings of fact the trial court made findings as to the amounts which it found had been received and which had not been accounted for. As an illustration the fourth finding is: "That prior to the filing of said first account and on July 23, 1910, there was paid to said defendant Early $2,000, and on September 3, 1910, $3,000, on account of and pursuant to two decrees of partial distribution made in the matter of the estate of said Andrew P. Gaver, deceased, in favor of said plaintiff, and on May 8, 1911, $5,036.83, on account of and pursuant to a final decree of distribution in the said estate of Andrew P. Gaver, deceased. That pursuant to said final distribution there was also distributed to plaintiff an undivided one-half interest in certificate of deposit No. 2350 of the Santa Rosa Bank, dated July 2, 1909, in the sum of $38,987.60, with interest at the rate of six per cent per annum; that thereafter said defendant Ellen Gaston indorsed said certificate of deposit No. 2350 and delivered the same to said defendant Early; that thereafter and upon the twenty-eighth day of June, 1911, said defendant Early did collect and receive as interest on said certificate of deposit $2,339.22, one-half of which last mentioned sum, to wit: $1,169.61, was collected and received by him for and on account of the estate of said plaintiff, and the other one-half of said amount was collected and received by him for Bessae Gaver Steitz, the sister of said plaintiff; that thereafter said defendant Early collected the principal of said certificate of deposit No. 2350 on the dates and in the amounts as follows: October 16, 1911, $8,987; October 23, 1911, $10,000; October 24, 1911, $10,000, and October 28, 1911, $10,000; that one-half of said sums, to wit, $19,493.50, was collected by him for and on account of the estate of said plaintiff and a like amount was collected by him for said Bessae Gaver Steitz; that on the fifth day of July, 1911, a stock dividend of $2,500 was declared by the Bank of Tomales upon stock owned by said plaintiff and credited to the bank account of said defendant Ellen Gaston, as

guardian of said plaintiff, and was thereafter collected and received by said defendant Early. That each and all of the foregoing items, together with the dates of collection and the amounts thereof, were entirely omitted from said first account, and no part thereof was accounted for therein, nor otherwise nor at all, except the sum of $16,851.39, which appears in said first account in the following manner and not otherwise: 'Cash received from the estate of Andrew P. Gaver, deceased, $7,357.89,' and 'Cash received Santa Rosa Bank Deposit, $9,493.50'; that both of said last mentioned entries were inserted in said first account by said defendant Early fraudulently and for the purpose of concealing the fact that he had omitted therefrom and had converted to his own use the sum of $16,348.55, thus omitted from said first account as aforesaid.'' That finding, and similar findings, show the items the court allowed as receipts which had not been otherwise accounted for. As the trial court proceeded with the trial it made certain calculations by virtue of which other items of receipts were set off against certain expenditures which likewise had not been otherwise accounted for, that is, errors in favor of the defendants were set off against errors against the defendants. An illustration of the procedure followed by the trial court is the matter of the rents received between the date the guardian filed her first account and the date she filed her second account. The proof introduced at the trial tended to establish the sum of those rentals at $7,190.94; the amount stated in the second account was $4,966.00. The apparent shortage was $2,224.94, but in this connection there were some disputed items of some doubt which the court determined in favor of the defendants and thereupon it deducted from the sum last mentioned $100, thereby charging the defendants with the net item of $2,124.94. (Finding Five.) Such procedure is not the most approved method; however, during the trial, each party was allowed to oppose each item against him and to fully present each item to which he could lay any claim. While the trial court made offsets as above recited, as to items which are not expressly disposed of in the findings, the appellant has not called to our attention any prejudicial error. The appellant makes a claim that he has been overcharged $14,422.23, and enumerates the items. It is true that the

findings made without the issues do not show that the component parts of that $14,422.23 were allowed, but the reporter's notes show there was no overcharge. The appellant does not cite to us any part of the record showing prejudicial error in allowance or disallowance for or against him. We have carefully examined the record and we do not find any such instances. On the other hand, we do find that the component factors of the said $14,422.23 were given due consideration. Although not in the manner suggested or advocated by the appellant, nevertheless the same were not improperly disposed of nor were the same ignored.

[6] The defendants were charged with $2,500 as a stock dividend received from the Bank of Tomales. Such an item appeared as an entry in the pass-book and also on the loose-leaf ledger account of the bank. The plaintiff offered in evidence separately the pass-book and the loose-leaf ledger account of the bank, which were marked, respectively, plaintiff's exhibits 33 and 32. The pass-book was objected to as being incompetent, irrelevant, and immaterial, and hearsay, not identified as a record of the bank by any witness, no proof that Mrs. Gaston ever had it in her possession or ever saw the book or knew anything of the entries in it or had any knowledge of it at any time. As appears from the facts. which we have already recited, Mr. Early was the agent of Mrs. Gaston and Mrs. Gaston is deemed to have had notice of whatever Mr. Early had notice of, and ought in good faith and the exercise of ordinary care and diligence to have communicated to her. The evidence shows in many places that Mr. Early had possession of the pass-book at many times,—indeed, nearly all of the time. The book contains the item in question as being the second item entered therein. "Date, July 6, 1911; deposit, $2,500; balance, $7,527.54." There was no error in admitting the book in evidence. The loose-leaf ledger account, plaintiff's exhibit 32, contained as the second item thereon, "Date, July 6, 1911; Div. 86; Deposit, $2,500." Conceding without deciding that it was error to admit the ledger sheet, it is patent that the sheet showed only the same facts which were shown by the pass-book. If it was error to receive the sheet in evidence the error was not prejudicial.

After the probate court had settled the fourth account it was clear that the plaintiff was entitled to receive over $20,000 in cash. However, the plaintiff stated to Mr. Early that he wanted investments for his cash, and in that conversation, and other conversations held at about the same time, the plaintiff and Mr. Early discussed the matter of the plaintiff taking in part payment seventy-one shares of the capital stock of the Bank of Santa Rosa. The plaintiff testified that he agreed in those conversations to pay $60 per share. Mr. Early testified that the plaintiff was to pay $130 per share. The trial court adopted that version of the facts as recited by the plaintiff and gave the defendants credit for the bank stock at $60 per share. With the record standing as it does, we think this court may not disturb the allowance as made by the trial court.

[7] As the trial proceeded the judge presiding at the trial propounded many questions to witnesses and made many statements to counsel of and concerning his impressions regarding the proof introduced. The appellant cites certain of those passages and claims that the trial court decided the case, or at least parts of it, before the case had been finally submitted. We think this contention is not borne out by the record, but, on the other hand, that the trial judge worked most patiently to develop all of the facts and gave each particle of the testimony full consideration without regard to any of the remarks that were made during the progress of the case.

We find no error in the record and the judgment against the defendant W. H. Early is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 5, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, was acting.