[Civ. Nos. 17785, 18075. Second Dist., Div. Three. Feb. 16, 1951.]

MARGARET WILSON, Respondent, v. DAVID SHULTZ et al., Appellants.

McLaughlin & Casey and James A. McLaughlin for Appellants.

Robert Wanamaker and John H. Poole for Respondent.

VALLÉE, J.—Appeal by defendants from an adverse judgment in an action seeking cancellation of two leases of real property and a bill of sale of personal property on the ground of false and fraudulent representations allegedly made by defendants with respect to the income received from

the operation of the leased premises immediately preceding plaintiff's occupancy.

On January 15, 1949, defendants, as lessors and owners of a 30-room hotel and an adjoining cottage at Catalina Island, entered into two five-year leases with plaintiff, as lessee, one for the hotel, the other for the cottage. Plaintiff paid defendants $8,700 for advance rentals and furniture deposits under the leases, for the good will of the premises, and the transfer of the personal property. Plaintiff, an elderly woman in her late eighties, was represented throughout the transaction by John R. McCall, her son and duly appointed agent, whom we refer to as plaintiff.

Plaintiff went into possession on February 15, 1949. She and her son occupied the cottage. During her occupancy she spent some $1,691.99 in improvements. In April she discovered that the income from the hotel was not as it had been represented. Prior to May 15 she told defendant David Shultz that the property had been "misrepresented" to her and that she "would like very much to get relief, and the best way is to give me my money back." Defendants refused. Plaintiff paid the rent called for by the leases up to and including May 15th. She operated the hotel until June 25, 1949. A few days later the hotel was closed. During her period of occupancy, plaintiff collected a total of $1,512.86 in rentals.

On November 17, 1949, a judgment was entered for plaintiff, from which defendants appealed (No. 17785). Findings of fact and conclusions of law had been filed but through inadvertence had not been signed by the trial judge. After the appeal had been taken, on motion of plaintiff, this judgment was vacated, new findings of fact and conclusions of law were signed and filed, and a new judgment entered on May 17, 1950. The two judgments are identical in form except for their respective dates and for the amount of interest.

The judgment of May 17, 1950, decreed that the leases and bill of sale be cancelled, that defendants be restored to the possession of the real and personal property, and awarded plaintiff "the sum of $9462.44, with interest on the sum of $8700 at the rate of 7% per annum from February 1, 1949, amounting to $776.48, making a total sum of $10,238.92." Defendants also appealed from this judgment (No. 18075). There was no appeal from the order vacating the judgment entered November 17, 1949.

Defendants' principal contention is that the evidence does not support the finding of fraud. It appears that pending negotiations for leasing the premises, defendants represented to plaintiff that the gross income from the operation of the hotel for the period immediately preceding her contemplated occupancy, i.e., October, 1947, through September, 1948, was "not less" than $16,424.90, and the net profit $9,019.08, as hereafter shown. The court found that this was a representation of a material fact, was false, was made for the purpose of inducing and did induce plaintiff to lease the hotel and cottage and purchase the personal property, and was not warranted by the information then had by defendant David Shultz, that, "on the contrary, he had knowledge of facts which then did, or should have caused him to believe that the gross income," represented to plaintiff, was substantially in excess of that actually received 'from the operation of the hotel, and that he did not disclose the true facts to plaintiff.

We state the facts in the light most favorable to the prevailing party.

In the summer of 1947, Pearl Baird purchased the remaining term of a five-year lease of the hotel from former lessees of defendants. In July, 1948, she began to complain frequently to defendants, who were living next door in the cottage and whom she saw "practically every day," that her rent was too high and that "she wasn't making any money." In the "fall" of 1948 (the exact date does not appear) Mrs. Baird and defendant David Schultz went to a real estate broker named Poren. Poren testified that "Mrs. Baird was complaining she was unable to meet her rental payments, and Mr. Schultz and Mrs. Baird were in there to see if I could figure out an equitable proposition whereby she could pay them, and if I couldn't figure that out to see if I could dispose of the lease for her, sell the lease"; that Mrs. Baird showed him "notations she had taken from the books"; they did not show a net profit of $9,000; that he did not feel it was worth his while to attempt to sell the lease after "looking the income over and the expenses over, and that sort of thing, and what she was asking for the lease"; that at first Mrs. Baird wanted "$12,000, and later she came in and said she would take ten, and then she came in and said she would take eight, and then she said she would take six. That was the last I heard of her"; that Mrs. Baird and Shultz told him that Shultz had made one reduction on Mrs. Baird's rental payments and would consider making another.

In the latter part of August, 1948, Mrs. Baird listed the hotel lease and her linens for sale with Roy X. Long, a broker. She did not keep a regular set of books but she furnished him with the records she kept, consisting of registration cards, receipt books and daily room accounts, together with bills, vouchers and receipts showing expenses incurred during the period she operated the hotel, October, 1947, through September, 1948. Unknown to Long, among the records she gave him were fabricated guest registration cards showing receipts of fictitious room rentals during July and August. From these records, Long made a compilation showing an average monthly income of $1,368.74 and the average monthly expenses of operation for the same period. The compilation showed a gross income of $16,424.90 and a net profit of $9,019.08 during that period.

In October, 1948, being in default in her rent for September and October, Pearl Baird and defendant David Shultz entered into an oral agreement whereby she surrendered her prepaid rents and security deposits, turned over the keys, the possession of the property, and her linens to Shultz, and he released her from all obligations under the lease. She was to receive $1,000 for her linens as soon as he received the money from a future lease of the property. At that time an inventory of the personal property was made by Shultz and Mrs. Baird. Shultz delivered the inventory to Long and offered him a commission of $1,000 if he could get him a ''good reliable party'' to lease the property. Shultz knew that Mrs. Baird had listed the lease and personal property with Long. Long asked him if he wanted to sell on the same terms as Mrs. Baird. Shultz said he did. For reasons not disclosed Long ostensibly continued to represent Mrs. Baird. The circumstances were such as to cause the trial court to comment that it ''looks like a rather professional deal to me.''

In December, 1948, Long advertised the hotel lease and the personal property for sale. Plaintiff answered the advertisement and discussed the matter with him. Long stated he represented Mrs. Baird, that $8,500 was the sale price for the ''transfer'' of the lease, and that the rental on the premises would be $400 a month. He did not disclose the fact that Mrs. Baird had been released from the obligations of the lease or that Shultz was his principal. He showed plaintiff the compilation he had made from Mrs. Baird's records, revealing a gross income of $16,424.90 and a net profit of $9,019.08 during the period of her occupancy, and plaintiff made a notation of

these figures. Plaintiff met defendant David Shultz for the first time at Catalina when she inspected the hotel. Shultz had the keys and Long introduced him as the owner. Soon thereafter, at plaintiff's request, a meeting with Mrs. Baird was arranged in Long's office. Defendants were not present. At this meeting plaintiff and Mrs. Baird discussed generally the operation of the hotel, including the income and expenses. Mrs. Baird emphatically assured plaintiff that the figures which Long had compiled from her records and which had been shown to plaintiff were correct. Mrs. Baird stated she owned everything in the hotel except the furniture. Plaintiff asked what the $8,500 embraced and she said "it comprised the deposits, the good will, the inventory in the hotel." Neither Long nor Mrs. Baird informed plaintiff that she had been released from the lease.

Later plaintiff telephoned Long, telling him to make Mrs. Baird an offer, which included a note and trust deed owned by plaintiff on property in Manhattan Beach. Plaintiff was told that although Mrs. Baird was not interested in that "kind of a deal," because she wanted all cash, Shultz might be interested. Later Long telephoned plaintiff that Shultz would accept the note and pay Mrs. Baird the cash she demanded. Thereafter a meeting between plaintiff and defendants was held in Long's office. Mrs. Baird was not present. Plaintiff told Shultz that the " 'one thing that is bothering me very much is this rent of $400 a month. . . . I can't be sure that this is a fair rent. This rent seems to me to be very high for a hotel of that size, particularly with a seasonal operation.' And I asked Mr. Long to present to Mr. Shultz the recap he had taken from Pearl Baird's figures. He presented not only the recap but the records of Pearl Baird that he had taken from the top of his desk to Mr. and Mrs. Shultz. Mr. Shultz looked the recap in the black book over and then handed it to Mrs. Shultz. And he said, 'Why are you concerned with the rent? I think $400 a month is a fair rent.' And I said, 'Yes, it is fair if the figures shown in this recap are the actual figures.' And Mr. Shultz said, *'I can assure you you do not have to worry about that. I know she did more than that. . . .* As a matter of fact, I can take you to Catalina Island and introduce you to people who will tell you that *she did more than these figures show here.'* And then Mrs. Shultz spoke up and said, 'Yes, as a matter of fact, I know Pearl Baird took in between $19,000 and $20,000 in the same period. She has been ill and away, and hasn't been able to keep

her records up as well as she should.' And then I said, 'If there is a reasonable assurance that the $400 a month is right, because a hotel operator should not pay more than 25% of his gross income.' And Mr. Shultz said, 'You don't have any worry there. I can reassure you you will find you will take in considerably more than that; furthermore, with a reasonable operation, I can assure you you will do closer to $18,000.' Well, I felt reassured when Mr. Shultz told me this, because after all he was the owner of the hotel, and in view of the fact that he had seen the other operators operate the hotel I felt he was reasonably certain what I would be able to do there.'' There was also evidence that defendant Shultz told plaintiff, ''I can assure you . . . that these figures [the compilation shown plaintiff by Long] *are considerably less than what was actually taken in.''* At this meeting the question of taking a new lease rather than an assignment of the Baird lease was brought up for the first time. After this meeting and on January 2, 1949, the parties went into escrow. Plaintiff inquired as to the whereabouts of Pearl Baird and was told that defendants had acquired her interest in the property. Plaintiff agreed to go on with the deal and to accept a new lease from defendants and purchase the personal property from them.

The foregoing evidence, contrary to defendants' contentions, amply supports the findings of fraud, is clear and convincing, connects the defendants with the fraud, and establishes reliance by plaintiff upon the false representations of defendants.

Defendants' argument that their representations were but statements of opinion is untenable under the circumstances of this case. They made positive statements, not warranted by their information, as to the amount of the income from the property. The representations were material and were actionable affirmations of fact. (Civ. Code, §§ 1572, 1710.) A representation concerning the past income from property has been held to be a representation of fact. (*Dyke* v. *Zaiser,* 80 Cal.App.2d 639, 648-649 [182 P.2d 344] ; *Chamberlain* v. *Wakefield,* 95 Cal.App.2d 280 [213 P.2d 62] ; *Spencer* v. *Deems,* 43 Cal.App. 601, 604 [185 P. 671] ; *cf. Costello* v. *Roer,* 77 Cal.App.2d 174, 178 [175 P.2d 65].) Having undertaken to make representations with respect to the income derived from the operation of the hotel, defendants were bound by law to make an honest statement and not conceal any

fact within their knowledge which might materially qualify such statements. (*Dyke* v. *Zaiser, supra,* 80 Cal.App.2d 639, 651-652; *Rogers* v. *Warden,* 20 Cal.2d 286, 289 [125 P.2d 7].)

Defendants complain that in adjusting the equities between the parties the court arbitrarily made a finding as to the reasonable rental value of the hotel and cottage, unsupported by any evidence.  ■  The court found that the reasonable rental value of the hotel for the period it was occupied by plaintiff was $1,512.86.  The lease provided a rental of $1,600 for that period.  Plaintiff received rentals of $1,512.86 during the period.  The evidence was thus sufficient to warrant the court finding that the reasonable rental value of the hotel was $1,512.86.  ■  The court found that the reasonable rental value of the cottage for the period it was occupied by plaintiff was $350.  The only evidence of the reasonable value of the cottage for that period was the lease which fixed a rental of $361.12.  The court therefore erred in finding that the reasonable rental value of the cottage was only $350.

The appeal from the judgment entered November 17, 1949, is dismissed.  That portion of the judgment entered May 17, 1950, now reading: "Now, THEREFORE, by reason of the law and findings aforesaid, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover judgment against the defendants David Shultz and Sophie Shultz, jointly and severally, in the sum of $9,462.44, with interest on the sum of $8700 at the rate of 7% per annum from February 1, 1949, amounting to $776.48, making a total sum of $10,238.92, and plaintiff's costs in the sum of $124.30," is modified to read as follows: "Now, THEREFORE, by reason of the law and findings aforesaid, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover judgment against the defendants David Shultz and Sophie Shultz, jointly and severally, in the sum of $9451.32, with interest on the sum of $8700 at the rate of 7% per annum from February 1, 1949, amounting to $776.48, making a total sum of $10,227.80, and plaintiff's costs in the sum of $124.30." As thus modified, it is affirmed.  Respondent is allowed costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.