[Civ. No. 23592. Second Dist., Div. Three. Aug. 25, 1959.]

M. G. CHAMBERLAIN AND COMPANY (a Corporation) et al., Appellants, v. KENNETH R. SIMPSON, JR., et al., Respondents.

Lyman A. Garber for Appellants.

Gibson, Dunn & Crutcher, Julian O. von Kalinowski, John J. Waller and Finch, Bell, Duitsman & Jekel for Respondents.

VALLÉE, J.—Appeal from a judgment of dismissal entered on the sustaining of a demurrer to the third amended complaint, called the complaint, without leave to amend. The

complaint is in seven counts. The demurrer was joint and several, was to the entire complaint and to each count separately, and was general only. Concurrently with the demurrer, defendants filed a motion to dismiss the action on the ground each count of the complaint was sham and frivolous. The motion was granted. As will appear, the only question is whether one or more counts of the complaint states facts sufficient to constitute a cause of action.

The complaint is prolix and discursive. It abounds in evidence, conclusions of fact, conclusions of law, argument, and immaterial matter. The rule that the complaint must contain a statement of the facts in ordinary and concise language is completely ignored. (Code Civ. Proc., § 426.) Nevertheless, if, intermingled with such matters, there are averments of ultimate facts sufficient to constitute a cause of action, it was error to sustain the demurrer without leave.

We must disregard any defects in the pleading which do not affect the substantial rights of the parties. (Code Civ. Proc., § 475.) It must be assumed that plaintiff can prove all the facts as alleged. (*Wirin* v. *Horrall*, 85 Cal.App. 2d 497, 500 [193 P.2d 470].) ''All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief. [Citation.] 'In determining whether or not the complaint is sufficient as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' [Citation.] In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties. [Citations.] 'While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms.' '' (*Hardy* v. *San Fernando Valley C. of C.*, 99 Cal.App.2d 572, 577-578 [222 P.2d 314]; *Roberts* v. *Wachter*, 104 Cal.App.2d 281, 287-288 [231 P.2d 540]; *Toney* v. *Security-First Nat. Bank*, 108 Cal.App.2d 161, 167 [238 P.2d 645]; *Augustine* v.

*Trucco,* 124 Cal.App.2d 229, 236-237 [268 P.2d 780] ; *Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 288-289 [295 P.2d 113] ; *Skipper* v. *Gilbert J. Martin Constr. Co.,* 156 Cal.App.2d 82, 86 [318 P.2d 732] ; *Lincoln* v. *Grazer,* 163 Cal.App.2d 758, 760-761 [329 P.2d 928].)

Summarized, the allegations of ultimate fact are these:

### Count I

At all times plaintiff M. G. Chamberlain and Company, a corporation, possessed a license as a business opportunity broker (Bus. & Prof. Code, § 10250 et seq.), and is referred to in the complaint as "plaintiff." Plaintiff Marvin G. Chamberlain was its president and managing officer.

Defendant Pacific Moulded Products Company is a corporation. Prior to February or March 1955 its name was Lac Chemicals, Inc. For clarity, Pacific Moulded Products Company and Lac Chemicals, Inc., will be referred to as Lac Chemicals. Defendant West Coast Chemicals and Solvents Corporation is a corporation and is referred to as West Coast. At all times defendant Simpson was president and defendant Thurmond was vice-president of defendants Lac Chemicals and of West Coast and were their duly authorized agents, acting within the scope of their authority in the acts and agreements to be referred to. Lac Chemicals, West Coast, Simpson, and Thurmond are referred to as buyers. Defendant Pacific Moulded Products Co., referred to as Pacific, is a partnership composed of defendants Volney S. Anderson and Mildred C. Anderson. The partnership and the partners conducted the business which was the subject of the purchase and sale to be referred to. Defendant Volney S. Anderson is sometimes referred to as Anderson. Pacific and the Andersons are referred to as the sellers.

About March 15, 1954, defendant Simpson contracted orally to pay plaintiff a finder's fee of 5 per cent of the purchase price of any business which plaintiff found for him and which he purchased. At the same time Simpson named defendant Thurmond as his agent in dealing with plaintiff, and Thurmond so acted. About March 22, 1954, pursuant to the "5%-finder's-fee contract," plaintiff introduced Thurmond to Anderson. Neither Simpson nor Thurmond, nor any of the corporate defendants, had previously known Anderson or the business of Pacific. At that time plaintiff informed Thurmond that plaintiff was employed by Pacific as a business and financial consultant.

On information and belief, pursuant to oral negotiations

in the months of December, 1954, and January, 1955, of which plaintiff had no knowledge, an oral contract of sale and purchase of Pacific's business was entered into; and about February 9, 1955, the Andersons, as sellers, and Lac Chemicals and West Coast, as buyers, executed written agreements respecting the contract.

On information and belief, the purchase price of the partnership business was at least $585,000, and plaintiff's finder's fee was $29,250. Plaintiff has performed all duties on its part to be performed and has demanded of the buyers payment of the finder's fee, which has been refused.

### Count II

Count II realleges all the allegations of count I. It alleges plaintiff had no knowledge or suspicion of the transfer of the business of Pacific from the sellers to the buyers until April or May, 1955. About July 6, 1955, plaintiff queried Simpson by letter about the payment to it of the 5 per cent finder's fee. About July 22, 1955, Simpson replied by letter which did not deny the existence nor the accruing of the finder's fee but claimed reliance on an agreement of January 27, 1955. The agreement of January 27, 1955, is as follows:

### "Agreement for Compromise and Release

"This Agreement made January 27, 1955, at Los Angeles, California, by and between Marvin G. Chamberlain, also known as M. G. Chamberlain, Florence M. Chamberlain, his wife, and M. G. Chamberlain & Company, a corporation, hereinafter collectively referred to as 'First Party,' and Volney S. Anderson and Mildred C. Anderson, copartners, doing business as Pacific Moulded Products Co., hereinafter collectively referred to as 'Second Party,'

### "Witnesseth:

"Whereas, heretofore and on or about January 8, 1952, a written Memorandum Agreement was entered into between M. G. Chamberlain and Second Party, relating to and concerning the terms and conditions upon which Chamberlain would be compensated if, as and when the Pacific Moulded Products Co. enterprise was sold as the result of the efforts of Chamberlain. This agreement, by its terms, terminated and ended March 15, 1952, without any such purchaser being secured, and was not thereafter renewed; and

"Whereas, Second Party had periodically and from time to time issued and delivered certain checks to First Party,

the last of which was issued under date of May 8, 1953 aggregating $14,295.00, of which sum $10,000.00 was for 'interest' or participation on account of a proposed financing enterprise; and

"WHEREAS, the proposed financing enterprise was not completed so far as Second Party was concerned and, on or about May 1, 1953, Marvin G. Chamberlain delivered a note from M. G. Chamberlain & Company to Volney S. Anderson for the sum of $10,000.00, and later, on September 30, 1953, replaced that note with a note for $5,000.00 and a payment of $5,000.00, said $5,000.00 note bearing interest at 6% per annum, commencing May 1, 1953 and due April 30, 1954, which note has not been paid. Concurrently with the execution of the last above mentioned note, M. G. Chamberlain handed to Anderson Certificate No. 1 of M. G. Chamberlain & Company evidencing ninety-nine (99) shares of the capital stock of that Company, and Certificate No. 2 evidencing one (1) share of the capital stock of that Company, in the name of (Mrs.) Florence M. Chamberlain, neither of which certificates was endorsed. Thereafter, and on or about July 8, 1954, M. G. Chamberlain & Company presented its invoice to Pacific Moulded Products Co. for assorted services for the period May 1, 1953 to May 30, 1954 for an aggregate of 393¾ hours at $20.00 per hour, totaling $7,875.00; and

"WHEREAS, during the relationship between the parties hereto First Party contends that all services whether advisory, or for the securing of the purchasers for the Pacific Moulded Products Co. or its assets, or otherwise, were rendered to Second Party upon a basis of an hourly rate of charge, except for the period ending March 15, 1952, covered by the agreement mentioned in that first WHEREAS clause hereof,

"Now, THEREFORE, It is agreed by and between the parties hereto as follows:

"1. In consideration of the payment by Second Party to First Party of the cash sum of $1,800.00, receipt of which is hereby acknowledged, and the release and discharge of First Party by Second Party from all liability and obligation of whatsoever kind and character with respect to the aforesaid promissory note dated September 30, 1953, in the principal sum of $5,000.00, receipt of which note with the cancellation thereon by Second Party is hereby acknowledged, and the receipt by First Party from Second Party of the two (2) aforesaid certificates evidencing capital stock in the corporation known as M. G. Chamberlain & Company is hereby ac-

knowledged, First Party does hereby release, remise and forever discharge Second Party and any buyer or other party from any and all claims, demands, causes of Action and commissions with respect to services of First Party to Second Party or with respect to the sale, whenever consummated, of Pacific Moulded Products Co. or any of the assets thereof, except and to the extent that First Party may be granted rights by written agreement with Second Party or a buyer or other party executed after the date of this instrument.

''2. In consideration of the foregoing release by First Party of Second Party, and in consideration of the compromise payment by Second Party of all the aforesaid compensation claims of First Party, including the cancellation of said promissory note, second party does hereby release, remise and forever discharge First Party from any and all claims, demands and causes of action whatsoever.

''WITNESS our hands the day and year first above written.

> ''Marvin G. Chamberlain
> MARVIN G. CHAMBERLAIN, aka
> M. G. CHAMBERLAIN
>
> ''Florence M. Chamberlain
> FLORENCE M. CHAMBERLAIN''

Commencing in 1952 until about January 1, 1954, plaintiff performed services for the sellers. The detailed services are alleged. Monthly payments were made by the sellers from September, 1952, through May, 1953, aggregating $3,820. The periodic payments were not made after May 12, 1953. About June 1, 1954, Anderson terminated plaintiff's employment. On July 8, 1954, plaintiff sent Pacific a statement for services rendered from May 1, 1953, to May 31, 1954, in the sum of $7,875. The statement was not paid. The agreement of January 27, 1955, was executed by plaintiff for $6,800 as a compromise of plaintiff's statement of $7,875.

On information and belief, Simpson first met Anderson in April, 1954. At that meeting Simpson informed Anderson he was under contract to pay a finder's fee of 5 per cent, and Anderson stated to Simpson that between them they could handle the matter so that no fee would have to be paid to plaintiff. Anderson and Simpson thereupon entered into a plan to deceive plaintiff and to defraud it of its finder's fee. The agreement of January 27, 1955, is the ''end result'' of the plan to deceive. From about May, 1954, through January,

1955, the buyers falsely told plaintiff they had no interest in acquiring the business of Pacific. At least monthly Thurmond stated to Marvin G. Chamberlain that the buyers had no interest in the business of Pacific or in the purchase of another named business. On January 7, 1955, Thurmond stated to plaintiff the buyers did not have the slightest interest in either Pacific or in the other company. About January 17, 1955, the buyers again represented to plaintiff that they had no interest in acquiring the business of Pacific. The false statements made by Thurmond were known to all defendants. Plaintiffs believed the buyers had no further interest in the acquisition of the business of Pacific.

At all times from April, 1954, to the acquisition thereof, the buyers were interested in acquiring the business of Pacific and they were in frequent contact with the sellers with respect to its acquisition by them. ''[E]ach and every one of the representations to plaintiff about non-interest and non-intent were false and made to deceive plaintiff.'' On January 7, 1955, and for several weeks prior thereto, the buyers had been and were actively engaged in the closing phases of negotiations for the purchase.

The buyers directed Thurmond to make the misrepresentations. The misrepresentations were designed toward gaining a pecuniary advantage for the buyers. The buyers intended that plaintiff be deceived and knew that plaintiff was deceived by them. Plaintiff was deceived by the buyers' repeated representations of noninterest. In the presence of Anderson the buyers stated they had no interest in the purchase of the business of Pacific. The sellers concealed from plaintiff the fact of the buyers' interest in the purchase. When plaintiff reported to the sellers that the buyers had stated lack of interest in the purchase, the sellers withheld from plaintiff information that the buyers had expressed interest in the business to them. At all times from January 7, 1955, to April or May, 1955, plaintiff believed and relied on Thurmond's statement that the buyers did not have the slightest interest in either Pacific or in the other company. Plaintiff would not have signed the agreement of January 27, 1955, if it had not believed and relied on the representations.

From July 8, 1954, and particularly in December 1954 and January 1955, the sellers negotiated with plaintiff regarding the adjustment of plaintiff's bill for $7,875 and the payment of a note of plaintiff Marvin G. Chamberlain payable to defendant Anderson for $5,000. Anderson orally agreed

to compromise the two accounts for $6,800 by the cancellation of the $5,000 note and the payment of $1,800 cash to plaintiff. The oral agreement was reduced to writing and is the agreement of January 27, 1955. The agreement of January 27, 1955, was devised by defendants jointly. It was drafted by the sellers and presented to Simpson for approval by the buyers before it was signed by plaintiff. It was represented to plaintiff by defendants to be a compromise of the open book account for $7,875 and the note of $5,000. The buyers had knowledge of these facts and the sellers had knowledge of the misrepresentations made by the buyers.

On January 27, 1955, the buyers were the only ones from whom plaintiff would have been entitled to a finder's fee in the event of the sale of Pacific. "During the span of plaintiff's association with defendant ANDERSON, which commenced in the fall of 1951, it had in some manner or other touched upon fifty, more or less, persons or firms as possibly interested in some way or other in said business. With none of such persons or firms did plaintiff have a contract or claim of any nature for compensation." Plaintiff's per hour charge was the only compensation it was entitled to receive from Pacific. "With respect to the said fifty or so persons and firms a general release was a reasonable and understandable contractual element in the Compromise. But with respect to the buyer-defendants, the provision was a fraud in that: (a) plaintiff would not have executed the general release if it had not been fraudulently deceived by the defendants; and (b) plaintiff would have been alerted and would not have signed if the release had been a specific release of buyer-defendants, rather than a general release. The propriety and reasonableness of seller-defendants' requesting a release relating to the fifty or so persons and firms was part and parcel of the representations which deceived plaintiff." There was no consideration given plaintiff for the execution of any release of the buyers. Plaintiff did not know or suspect that a claim for a finder's fee against buyers existed in its favor when it executed the release of January 27, 1955. If plaintiff had had such knowledge or suspicion, it would not have executed it.

On January 31, 1955, a written agreement was entered into between the buyers and the sellers whereby the buyers purchased the business of Pacific, which agreement contained this provision:

"5. If any claim should be asserted against Buyers for

brokerage commissions in connection with this purchase or for compensation for services in finding or introducing the parties in connection with or leading up to this purchase, Buyers shall immediately notify Sellers thereof in writing and afford Sellers the opportunity of collaborating in defense of any such claim. Should Buyers, in their discretion reasonably exercised, be compelled to pay any such claim in full or in compromised amount, Sellers hereby indemnify Buyers on account of and agree to reimburse Buyers for the amount so paid but not to exceed $5,000.00.''

The prayer with respect to count II is for judgment against the buyers, the sellers, Simpson, and Thurmond for 5 per cent of the purchase price of the business of Pacific with interest and for other relief.

We are of the opinion count I states facts sufficient to constitute a cause of action against the buyers for breach of contract. By the terms of the contract pleaded, plaintiff was required only to find or introduce to the buyers a person interested in selling, and who subsequently did sell, in order to recover the fee agreed to be paid by the buyers. (*Freeman* v. *Jergins,* 125 Cal.App.2d 536, 546-549 [271 P.2d 210]; *Pawlak* v. *Cox,* 148 Cal.App.2d 294 [306 P.2d 619].) The elements of a cause of action for breach of contract are the making of the contract and its terms, plaintiff's performance, defendants' breach, and damage to plaintiff therefrom. (2 Witkin, California Procedure, 1226, § 251 et seq.) Count I alleges all of these elements. It alleges the making of a contract by the buyers with plaintiff whereby they agreed to pay it a finder's fee of 5 per cent of the purchase price of any business which plaintiff found and which they purchased; plaintiff's performance by finding the sellers; the purchase; defendants' breach by nonpayment of the fee; and damage to plaintiff therefrom. Count I contains all the averments necessary to state a cause of action.

Relying on the rule that where multiple counts in a complaint rely on the same facts as the basis for the plaintiff's right to recover they will be treated as one (*Tiedje* v. *Aluminum Taper Milling Co.,* 46 Cal.2d 450, 452 [296 P.2d 554]), defendants seek to import into count I the allegations of count II with respect to the execution of the release and to avail themselves of those allegations to defeat plaintiffs' cause of action, separately stated in count I. The only defendants against whom recovery is sought in count I are the buyers.

No reference to the release is made in count I. The release is between plaintiff and the Andersons, copartners doing business as Pacific Moulded Products Co. While a count sufficient in itself may not ordinarily be defeated by importing, from another count, an allegation to which the sufficient count makes no reference (*Lambert* v. *Southern Counties Gas Co.*, 52 Cal. 2d 347, 352 [340 P.2d 608]), we will assume that the allegations of count II with respect to the execution of the release may be imported into count I. We proceed to consider count II.

We are of the opinion count II states facts sufficient to constitute a cause of action. It realleges all the allegations of count I. Apparently for the purpose of stating a cause of action against the sellers and anticipating the defense of the buyers and perhaps of the sellers, plaintiffs plead the release of January 27, 1955, and allege it was procured by fraud of the buyers and the sellers. Count II alleges that at the time the release was executed the buyers and sellers had agreed to the purchase and sale of Pacific and that they intentionally concealed that fact from plaintiff in order to procure the release.

Actual fraud may consist in the suggestion, as a fact, of that which is not true, by one who does not believe it to be true, or in the suppression of that which is true, by one having knowledge or belief of the fact, or any other act fitted to deceive. (Civ. Code, § 1572.) Deceit is either the suggestion as a fact of that which is not true, by one who does not believe it to be true, or the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact. (Civ. Code, § 1710.) Deceit may be negative as well as affirmative, and may consist in the suppression of that which it is one's duty to declare as well as in the declaration of that which is false. (*General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 196 Cal. 179, 189 [237 P. 33]; *Daily* v. *Superior Court*, 4 Cal.App.2d 127, 131 [40 P.2d 936].)

An apparent consent is not real or free when obtained by fraud. (Civ. Code, § 1567.) Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud. (*Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 235 [153 P.2d 325].) Having undertaken to make representations with respect to the facts, defendants were bound

276

by law to make an honest statement and not conceal any fact within their knowledge. (*Wilson* v. *Shultz*, 102 Cal.App.2d 345, 351 [227 P.2d 524].)

 "The general elements of a cause of action for fraudulent misrepresentation are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. (See *Seeger* v. *Odell* (1941), 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; Rest., Torts, § 525 et seq.)" (*Zinn* v. *Ex-Cell-O Corp.*, 148 Cal.App.2d 56, 68 [306 P.2d 1017].) All of these elements are alleged in count II. It alleges the buyers and the sellers and their agents falsely represented to plaintiff that the buyers were not interested in the purchase of the business of Pacific; they concealed from plaintiff the fact that the buyers were interested and that an oral agreement for the purchase and sale had been entered into; they knew their representations were false; by their misrepresentations and concealment they intended to induce plaintiff to execute the release; plaintiff relied on the misrepresentations and concealment; plaintiff was justified in relying on them; and plaintiff suffered damage as a result. The Restatement says:

"Fraud or material misrepresentation by a third person renders a transaction voidable by a party induced thereby to enter into it if the other party thereto

"(a) has reason to know of the fraud or misrepresentation before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction. . . ." (Rest., Contracts, § 477.)

 Where it is shown that deception has been practiced in obtaining a release, it may not be considered as a satisfaction of anything not consented to by the claimant. Where a release is procured through fraud and conspiracy, it is immaterial whether the fraud was practiced by an authorized or a self-constituted agent of the releasee. In either event, the releasee should not be allowed to take advantage of an unfair settlement obtained through the fraud of a third party for his benefit. Even persons who were not parties to procuring a release cannot defend its validity against procurement by fraud. (42 Cal.Jur.2d 720, § 23.) The failure to disclose material facts affecting the essence of a release agreement may constitute actual fraud vitiating the contract. (*Palmquist* v. *Mercer*, 43 Cal.2d 92, 100 [272 P.2d 26]. Also see *Dobinson* v. *McDonald*, 92 Cal. 33 [27 P. 1098]; *Walter*

v. *Libby,* 72 Cal.App.2d 138, 144 [164 P.2d 21]; *Chung* v. *Johnston,* 128 Cal.App.2d 157 [274 P.2d 922].)

Defendants assert plaintiffs cannot maintain the action for the finder's fee since there has been no rescission of the release and no return or tender back of the consideration. The assertion is without merit. *Montes* v. *Peck,* 112 Cal. App. 333 [296 P. 624], was an action for damages for fraud in misrepresenting the rental paid by a lessee of a public garage in a building which the plaintiff purchased from the defendant. The plaintiff signed a release after discovery of misrepresentations as to rentals paid by other tenants of the building in which the plaintiff, for a reduction of $2,000 in the purchase price of the building, agreed that he would have no claim against the defendant should it develop that the income from the building was less than the income as represented. While the vendor admitted the discrepancies in the other leases that the vendee had discovered before the execution of the release, the vendor continued to misrepresent the rentals from the garage lease. The court first held that the release was intended by the parties to cover the garage lease as well as the other leases in the building, and that because of the fraud with respect to the rental from the garage lease the release was subject to be set aside. The vendor contended that it was necessary for the vendee, before maintaining the action, to return or to offer to return the $2,000 which the vendor claimed to have paid for the release through the reduction in the purchase price of the property. The court held (p. 339):

"Appellant [vendor] argues that this release agreement, which is being attacked for fraud in its procurement, was voidable only, and therefore it must be rescinded and restoration made or offered, before a recovery could be had. He relies upon *Garcia* v. *California Truck Co.,* 183 Cal. 767 [192 P. 708], *O'Meara* v. *Haiden,* 204 Cal. 354 [60 A.L.R. 1381, 268 P. 334], and section 1691 of the Civil Code. It has been held in the cases referred to, and others, that where it is sought to set aside a release agreement where the parties understood what was involved, but where it is claimed that the making of the release contract was induced by fraud, the contract is voidable and not void; and that where the amount claimed by the plaintiff is an unliquidated amount, or, in other words, where the plaintiff is not in any event entitled to keep the amount paid, the consideration paid for the release must be

restored or an offer to restore must be made. In all of the cases laying down this rule, to which our attention has been called, the action was one for damages for personal injuries, and the plaintiff sought to avoid a release agreement in order to go back to an original cause of action for tort, the action itself having no connection with the contract, except that the contract purported to bar such an action. . . .

"[P. 341.] The inapplicability of the rule contended for by appellant is further seen in the fact that the respondents have received nothing as a consideration for this purported release, except the property which was being purchased in the deal, and the appellant paid the respondents nothing for this release, except in the way of reducing the purchase price of that property. To require respondents to rescind one part of the contract, and as a part thereof, to restore or offer to restore $2,000 in cash which they never received, while under the established rule of law, they cannot be required to rescind the whole contract, or restore the entire property, which they actually did receive, would be a most unusual situation. They received nothing except the property they were buying, and they had the right to retain that property and sue for such damages as were suffered through the fraud of the other party.

"While the so-called release is not such a separate agreement as must be separately rescinded, as one of its effects, it did make a settlement of all claim for damages on account of the fraud already discovered. Its validity and effect for this purpose has not been, and is not here, attacked by either party thereto, this action involving only the fraud in respect to the garage lease which was then undiscovered."

This holding, in our opinion, is squarely applicable to the facts alleged in count II.

It may be doubtful whether on the facts alleged the release embraces the claim for the finder's fee. It is alleged that it was prepared by defendants and is to be construed most strongly against them. It is between plaintiffs and the sellers. It is alleged that the sellers were indebted to plaintiff and that plaintiff was indebted to the sellers. It is also alleged that it was drawn to memorialize an oral agreement to compromise cross-claims by reducing plaintiff's open account by $1,075. It may be reasonably concluded from the facts alleged that the primary purpose of the release was the compromise of those claims. By the compromise plaintiff forgave $1,075 of its claim. On the facts alleged, the consideration, if any, which

plaintiff received was the consideration for the services it had previously performed for the sellers. The release did not embrace claims unknown to plaintiff and which it did not intend to release.

It is alleged that between the fall of 1951 and June 1, 1954, plaintiff approached many prospective buyers on behalf of the sellers in an effort to find a buyer for the business of Pacific, and that it understood the term "any buyer" in the release to refer to those prospective buyers and not to defendants-buyers. If the release be deemed ambiguous as to the intent of the parties—the possible coverage of plaintiff's claim for the finder's fee—the court on trial may properly consider any testimony of the parties to the release bearing on their intentions and understandings. Plaintiff could have understood that the Andersons wanted to be reassured by a release that it would make no claim in the event of a sale to any of the many prospective buyers approached between 1951 and June 1, 1954. If it was the intention of the sellers to obtain a release of the very fraud they and the buyers were committing, of which plaintiffs were ignorant, and if they incorporated in it language designed to accomplish that purpose, that in itself would constitute a fraud on plaintiff rendering the release void and rescission unnecessary. (*Sime* v. *Malouf*, 95 Cal.App.2d 82, 110 [212 P.2d 946, 213 P.2d 788].) As said in Sime (p. 111) : "A restoration is not necessary, in order to avoid the bar of a release, where there is no question as to the right of the plaintiff, arising independently of the release itself, to retain what he received. (*Campbell* v. *Birch*, 19 Cal.2d 778 [122 P.2d 902] ; *Walsh* v. *Majors*, 4 Cal.2d 384 [49 P.2d 598] ; *Kales* v. *Houghton*, 190 Cal. 294 [212 P. 21] ; *Matteson* v. *Wagoner*, 147 Cal. 739 [82 P. 436] ; *Richards* v. *Fraser*, 122 Cal. 456 [55 P. 246] ; *Gilson Q. M. Co.* v. *Gilson*, 47 Cal. 597.) The law does not require, as the price of attack upon a fraudulently induced release, sacrifice of independent rights, or the doing of idle acts. (See *De Garmo* v. *Petitfils Confiserie*, 93 Cal.App. 261, 275 [269 P. 692].) . . . Rescission and restoration are required only under equitable principles and to prevent the taking of unfair advantage. Restoration is not required unless the ends of justice require it."

 On the facts alleged, plaintiff may be entitled to retain the $6,800 it received in the compromise. (*Jordan* v. *Guerra*, 23 Cal.2d 469, 475-476 [144 P.2d 349] ; *Backus* v.

*Sessions,* 17 Cal.2d 380, 389 [110 P.2d 51] ; *Rued* v. *Cooper,* 119 Cal. 463, 468-469 [51 P. 704] ; *Holcomb* v. *Long Beach Investment Co.,* 129 Cal.App. 285, 291-292 [19 P.2d 31] ; *Ellis* v. *Jones,* 121 Cal.App. 325, 328-329 [8 P.2d 933] ; *Gaver* v. *Early,* 58 Cal.App. 725, 731 [209 P. 390].) If on trial the court should find no fraud by either the sellers or the buyers and that the release is valid in toto, the status quo remains. If on trial the court should find fraud by the sellers and the release invalid, it might be possible to litigate the cross-claims of plaintiff and the sellers and as a result plaintiff recover $2,875—the difference between its claim for $7,875 and its note for $5,000 held by the sellers. If on trial the court should find fraud by the buyers and not by the sellers, it could award damages against the buyers and yet hold the release valid as to the compromise for services rendered and as to all alleged prospective buyers. In none of these circumstances would rescission and restoration be required. As said in *California Farm & Fruit Co.* v. *Schiappa-Pietra,* 151 Cal. 732, 741 [91 P. 593], "the facts of this transaction are exceedingly complicated, and it is very clear that the terms upon which a rescission should be had and the property received restored, can only be determined upon a judicial investigation, in which the rights of all the parties can be fully guarded. We are therefore of the opinion that the circumstances shown by the complaint fully justify the failure of plaintiffs to offer to restore possession of the property before the commencement of the action, and bring the case within those classes of cases in which no such offer is necessary as a condition precedent to action."

We hold: count II alleges facts sufficient to show the release was obtained by fraud; on the facts alleged plaintiff was under no obligation to rescind or to restore; on those facts the release is voidable; and it states facts sufficient to constitute a cause of action. We further hold that if the allegations of count II with respect to the execution of the release may be imported into count I, that count I states facts sufficient to constitute a cause of action.

We think nothing would be accomplished in detailing the remaining counts of the complaint. They are largely repetitions of counts I and II and rambling argument. None of them appears to state facts sufficient to constitute a cause of action. Further, plaintiffs in effect say they need not be considered if it is determined that counts I and II state sufficient facts. We find nothing in the record justifying dismissal of

the action on the ground it is sham and frivolous. Since counts I and II do state sufficient facts, the judgment must be reversed.

 Plaintiffs also appeal from an order made after judgment denying their motion, under section 473 of the Code of Civil Procedure, for relief from the judgment. The motion was on the ground plaintiff did not have an opportunity before the judgment was entered to present objections thereto to the court. In view of our conclusion with respect to counts I and II of the third amended complaint, the appeal from this order is moot and will be dismissed. Prior to the filing of the third amended complaint plaintiffs had moved to file a second amended complaint. The motion was denied without prejudice to submitting another amended complaint. Thereafter plaintiffs' motion to file the third amended complaint was granted. After the judgment sustaining the demurrer to the third amended complaint had been entered, plaintiffs again sought leave by motion to file the second amended complaint. The motion was ordered off calendar. Plaintiffs have appealed from this order. That order is nonappealable and the appeal therefrom will be dismissed.[1]

The appeals from the order denying plaintiffs' motion for relief from the judgment made under section 473 of the Code of Civil Procedure and from the order placing off calendar plaintiffs' motion for permission to file the second amended complaint, are dismissed. The judgment is reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

---

[1] By voluntarily filing the third amended complaint and electing to stand on it until after judgment was entered, plaintiffs waived any claim of error in the refusal to permit the filing of the second amended complaint. (*Metzenbaum* v. *Metzenbaum*, 86 Cal.App.2d 750, 751-752 [195 P.2d 492].) The motion after entry of the judgment for permission to file the identical second amended complaint called on the court to repeat or overrule the former ruling on the same facts and the order made after the judgment was entered placing the motion to file the second amended complaint off calendar is not appealable. (*Litvinuk* v. *Litvinuk*, 27 Cal.2d 38, 44-45 [162 P.2d 8].)