**WABAN, INC., Plaintiff,**

v.

**EQUITY RESOURCE SERVICES, INC., Defendant.**

**No. 97 CV 2864 (NG) (JLC).**

United States District Court, E.D. New York.

May 20, 1999.

Richard G. Tashjian, Tashjian & Padian, New York City, for plaintiff.

Scott A. Newmark, Meister Seelig & Fein LLP, New York City, for defendant.

**MEMORANDUM AND ORDER**

GERSHON, District Judge.

Plaintiff Waban, Inc. ("Waban") is a Delaware Corporation with its principal place of business in Natick, Massachusetts. HomeBase, at all relevant times a division of Waban, operates retail warehouses selling home improvement and building supply merchandise to do-it-your-selfers and professionals. Defendant Equity Resource Services, Inc. ("ERS") is a New York corporation engaged in the business of the management of vending machines and related services. Waban filed this action against ERS on May 19, 1997 for an accounting and the imposition of a constructive trust and asserting claims for breach of contract, conversion and money had and received. ERS's answer asserts seven affirmative defenses. Waban moves

247

for partial summary judgment on its first cause of action for breach of contract, on its fourth cause of action for money had and received and for dismissal of ERS's seventh affirmative defense, which alleges that the contract upon which the plaintiff sues is void for fraud and misrepresentation.

## FACTS

The following facts are undisputed. In November 1995, Waban and ERS entered into a "Vending and Food Service Agreement" ("the Agreement"), which became effective on February 26, 1996, under which ERS agreed to provide vending machines and mobile food carts to Waban's HomeBase stores. Pursuant to Section 5 of the Agreement, ERS agreed to pay Waban, without demand, a commission equal to 85% of the commissions received by ERS from the operators of the vending machines and mobile food carts ("sublicensees"). The commissions received by ERS from the sublicensees were to be based on the total gross receipts received by the sublicensees from the operation of each vending machine and food cart. The commissions were required to be computed monthly, with payments for each calendar month's commission to be paid by ERS on the twentieth day of the second month following the sales month for vending machine programs and on the fifteenth day of the first month following the rental month for food carts. In addition, ERS agreed to provide Waban with comprehensive commission reports certified by an officer of ERS or his/her designee listing sales activity and collections and identifying sales and commissions generated for vending machines situated in employee-designated areas as distinct from public-vending areas. The Agreement also required ERS to issue separate checks for commissions due with respect to employee-designated vending machines at each facility, a single check for the total commission due with respect to all public-vending machines and a single check for the total commission due with respect to all food carts.

In December 1996, ERS issued commission checks to Waban for October 1996 collections: check no. 2320 in the amount of $19,126.78 for public-vending machine commissions, and check no. 2323 in the amount of $20,506.25 for food cart commissions. ERS issued an additional series of checks for the employee-vending machine commissions totalling $10,519.19. Waban could not negotiate these checks, which were dishonored. ERS never issued replacement checks to cover these dishonored checks and never made any other form of payment to Waban to cover the amount of the dishonored checks. Robert Hotaling, the President of ERS, testified at his deposition that he signed the checks in his capacity as ERS's president and that he did so because ERS owed commissions to Waban in the amounts reflected in the checks, a sum of $50,152.22. Hotaling further stated that he did not reissue the checks upon the advice of his lawyer because the parties were in litigation and he thought Waban owed ERS more money than it owed Waban.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *See id.* A material fact is one whose resolution would "affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the infer-

ences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

■ Section 18(F) of the Agreement provides for the application of California law to all contract claims and the parties agree to the application of California law. Accordingly, California law shall govern this action. In California, the elements of an action for breach of contract are: (1) the making of a contract and its terms; (2) plaintiff's performance; (3) defendant's breach and (4) damage to plaintiff from breach therefrom. *M.G. Chamberlain & Co. v. Simpson,* 173 Cal.App.2d 263, 274, 343 P.2d 438 (1959).

Waban moves for partial summary judgment on only one of its claims for breach of contract, namely, on the ground that ERS failed to pay the commissions it owed to Waban under Section 5 of the Agreement. It is undisputed that ERS owed Waban commission checks in the total amount of $50,152.22. It is also undisputed that the checks that ERS issued were dishonored and that ERS never paid the amount it owed Waban in commissions. To the extent that the parties dispute the circumstances surrounding the dishonoring of the checks, Waban's response, and Hotaling's failure to reissue the checks, those disputes are immaterial to the resolution of Waban's breach of contract claim for commissions. ERS acknowledged at the time the checks were signed that it owed $50,152.22 in commissions and, despite that acknowledgement, Waban has not been paid. Even now, Mr. Hotaling, the President of ERS, acknowledges the debt.

■ ERS argues that the existence of its breach of contract counterclaim is a basis for denial of Waban's motion for summary judgment. In its counterclaim, ERS alleges that Waban failed to allow ERS to maximize its profits by failing to provide ERS with exclusive control over the placement of the vending machines and food carts, by allowing property owned by ERS and the sublicensees to be damaged, and by refusing to allow ERS to implement the programs outlined in Exhibit B to the Agreement. There is nothing in the nature of this counterclaim which precludes granting Waban summary judgment on the debt for accrued commissions. The counterclaim does not allege breaches on the part of Waban that would excuse ERS from its obligation under the Agreement to pay those commissions to Waban.[1] Moreover, ERS has failed to present any evidence supporting any affirmative defense that would defeat Waban's motion for summary judgment on this claim. Accordingly, Waban's motion for summary judgment on its breach of contract claim is granted. Having granted summary judgment to Waban on its breach of contract claim for the $50,152.22 it is owed in commissions, it is unnecessary to address Waban's alternative legal theory, money had and received, seeking recovery of the same sum.

■ Waban also moves for summary judgment dismissing ERS's affirmative defense of fraud and misrepresentation. Since ERS has proffered no evidence of fraudulent intent on Waban's part, Waban's motion for summary judgment dismissing ERS's affirmative defense of fraud and misrepresentation is granted.

---

1. With respect to the breaches of the Agreement that ERS does allege in its counterclaim, ERS has offered only an affidavit from its president not based on personal knowledge and letters from sublicensees to the president listing their complaints. ERS's ability to succeed at trial on this counterclaim is therefore in serious doubt.

## CONCLUSION

Waban's motion for partial summary judgment on its breach of contract claim and dismissal of ERS's seventh affirmative defense of fraud and misrepresentation is granted.

**SO ORDERED.**