WALLINGFORD SHOPPING, L.L.C.,
Plaintiff and Counterclaim
Defendant,

v.

LOWE'S HOME CENTERS, INC. and
Lowe's Companies, Inc., Defendants
and Counterclaim Plaintiffs.

No. 98 Civ. 8462(AGS).

United States District Court,
S.D. New York.

April 18, 2001.

Mark S. Olinsky, Sills Cummis Radin Tischman, Epstein & Cross, New York City, for Wallingford Shopping, L.L.C.

Kevin L. Smith, Stroock & Stroock & Lavan LLP, New York City, Stephen H. Oleskey, Peter J. Kolovos, Hale and Dorr LLP, Boston, MA, of counsel, for Lowe's Home Centers, Inc., Lowe's Companies, Inc.

## MEMORANDUM ORDER

SCHWARTZ, District Judge.

Plaintiff ("WSL") filed this diversity action pursuant to Connecticut state law,

seeking damages from defendants ("Lowe's") arising out of Lowe's purported wrongful termination of a contract in which it had agreed to purchase a tract of land at the Wallingford Plaza in Wallingford, Connecticut. On February 2, 2001, the Court granted Lowe's motion for partial summary judgment and, *inter alia,* dismissed WSL's five non-contract claims, including a claim brought pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110 *et seq.* (Opinion and Order dated February 2, 2001 ("February 2, 2001 Order")). WSL now moves for reconsideration of the Court's dismissal of the CUTPA claim, pursuant to Fed.R.Civ.P. 59(e) ("Rule 59(e)"), and requests that the Court certify the February 2, 2001 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## I. Reconsideration

In the Southern District of New York, Rule 59(e) motions for reconsideration are governed by Local Rule 6.3, and the decision is within the district court's sound discretion. *See Ursa Minor Ltd. v. Aon Fin. Prods., Inc.,* No. 00 Civ. 2474(AGS), 2000 WL 1279783, at*1 (S.D.N.Y. Sept. 8, 2000) (citation omitted). Local Rule 6.3 provides that the motion shall "set[ ] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." In the Second Circuit, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). The Court recognizes that "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Securities Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000). "Reconsideration is to be

narrowly construed and strictly applied so as to avoid repetitive arguments." *Ursa Minor,* 2000 WL 1279783, at*1 (citation and internal quotations omitted).

Here, the Court finds that WSL has not set forth any new facts or controlling decisions overlooked by the Court in the February 2, 2001 Order, thus requiring the denial of WSL's motion to reconsider. *Shrader,* 70 F.3d at 257 (stating that "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided"). Nevertheless, a brief discussion of the substance of WSL's motion is warranted.

CUTPA, Connecticut's consumer protection statute, *see Telesis Merges & Acquisitions, Inc. v. Health Resources,* No. CV005972695, 2001 WL 273176, at*6 (Conn.Super.2001), was "enacted to protect the public from unfair trade practices." *Cormier v. Ulster Sav. Bank,* No. CV9704836395, 2000 WL 33158625, at*5 (Conn.Super.2000) (citing *Thames River Recycling, Inc. v. Gallo,* 50 Conn.App. 767, 720 A.2d 242 (1998)). In considering a CUTPA claim, the Court must determine whether the defendant's conduct: (i) offends public policy as it has been established by statutes, the common law, or otherwise; (ii) is immoral, unethical, oppressive, or unscrupulous; or (iii) causes substantial injury to consumers or other businesses. *See Omega Eng'g v. Eastman Kodak Co.,* 30 F.Supp.2d 226, 260 (D.Conn. 1998). On the instant motion, WSL contends that the Court overlooked the decision of the Connecticut Supreme Court in *Cheshire Mortgage Serv., Inc. v. Montes,* 223 Conn. 80, 612 A.2d 1130 (1992), in which the court purportedly held that: (i) a CUTPA claimant can prevail by satisfying two of the three elements of the test; and (ii) the third element can be satisfied even if the CUTPA claimant is the only

**154**

victim of the allegedly deceptive conduct. (Plaintiff's Memorandum in Support of Motion for Reconsideration ("Pl.Mem.") at 2–6; Reply Memorandum in Support of Plaintiff's Motion for Reconsideration ("Pl. Rep.") at 2–6.) In addition, WSL contends that the Court overlooked its own finding of "information asymmetry" between the parties in concluding that the first and second elements of the test were not satisfied to a significant degree. (Pl. Mem. at 3–5 (first element); Pl. Rep. at 6–12 (first and second elements).) Finally, WSL claims that the Court overlooked Second Circuit precedent in making findings as to Lowe's intent that were more properly left to the jury. (Pl. Mem. at 6–9; Pl. Rep. at 6–12.) WSL therefore requests that the Court find "that WSL has set forth sufficient evidence of one or some combination of the three CUTPA elements to submit the CUTPA claim to a jury." (Pl. Mem. at 10; *see also* Pl. Rep. at 6–12.)

■ WSL's contentions are unavailing. In considering the CUTPA claim in the February 2, 2001 Order, the Court relied on the principle, set forth in *Cheshire* and other Connecticut cases, that a practice can be unfair under CUTPA because of the degree to which it meets one of the criteria or because, to a lesser degree, it meets all three. *See Cheshire*, 612 A.2d at 1143–44; *see also Tech. Gas Prods., LLC v. Barnes Engineering Co.*, No. CV000372665, 2000 WL 1993770, at *2 (Conn.Super.Dec. 21, 2000) (citing *Willow Springs Condominium Assn., Inc. v. Seventh BRT Dev. Corp.*, 245 Conn. 1, 717 A.2d 77 (1998)). Contrary to WSL's contention, the *Cheshire* court did not hold that a plaintiff need only satisfy two elements of the test in order to be entitled to relief; rather, as this Court acknowledged in the February 2, 2001 Order, the *Cheshire* court found CUTPA liability, under the circumstances of that case, where the counterclaim plaintiffs had failed to establish the second element. *Cheshire*, 612 A.2d at 1146–47 (pointing to the "strong . . . public policies of informing and protecting consumers of credit" expressed by Section 36–2241 of the Connecticut General Statutes and the federal Truth in Lending Act ("TILA") (first element) and the substantial injury to the counterclaim plaintiff consumers from the counterclaim defendants' violation of those statutes); (February 2, 2001 Order at 36.) In this case, the Court found that WSL was unable to establish either the second or third element, and only could establish the first element to a limited extent, which precluded liability.[1] (February 2, 2001 Order at 35–37.)

In an effort to save its CUTPA claim, WSL challenges the Court's conclusions as to each of the elements. With regard to the first element, WSL claims that the Court's "finding" that there was "information asymmetry" between the parties contrasts with its conclusion that there was no evidence of substantial unfairness or bad faith indicative of a strong violation of public policy or unscrupulous and unethical conduct. (Pl. Mem. at 4; Pl. Rep. at 11.) The statement to which WSL alludes was made in the context of the Court's discussion of WSL's breach of fiduciary duty claim. The Court stated that the "information asymmetry from Lowe's *purported* failure to communicate certain information to WSL" would not create the dependency required for the establishment of a fiducia-

---

1. The Court agrees with WSL that *Cheshire* demonstrates a case-specific circumstance of CUTPA liability upon an "intermediate showing on two of the prongs" of the test. (Pl. Rep. at 2–3.) However, it disagrees that WSL has set forth the evidence required to either make such a showing or any other showing that would establish CUTPA liability in this case.

ry relationship. (February 2, 2001 Order at 25.) The Court did not make a finding as to the existence of such asymmetry, as it was discussed in the context of WSL's *allegations* of non-disclosure. Moreover, the Court's conclusion as to the non-existence of the dependency required for a fiduciary relationship supports its finding on the CUTPA claim that there was not a strong violation of public policy, as there was no disparity in bargaining position between the parties.[2]

With regard to the third element, the *Cheshire* court did not hold that this element of CUTPA's test for liability may be satisfied even if the CUTPA claimant is the only alleged victim of the allegedly deceptive conduct. Rather, the *Cheshire* court found that the counterclaim defendant mortgagee's failure to disclose certain prepaid finance charges to counterclaim plaintiff mortgagors resulted in harm to the mortgagors, who were "consumers of credit" engaged in a lending transaction. *Cheshire*, 612 A.2d at 1146–47. The *Cheshire* court determined that such failure to disclose, which was in violation of two statutes designed to protect consumers, resulted in "substantial injury" to consumers, i.e. the counterclaim plaintiff mortgagors, as they were assessed a finance charge great-

er than the maximum they could be assessed under the statutes. *Id.* at 1147. In contrast, in the instant case, the Court concluded that Lowe's' actions did not cause harm "to consumers or [to] other businesses." The record reflects that the only harm was to WSL, a sophisticated commercial party, as a result of the alleged breach of a private contract. No substantial injury to consumers or to other businesses is evident, or even inferrable, from the record.

■ WSL also claims that while "the Court closely reviewed the extensive record before it," "it unfortunately appears to have gone beyond assessing whether a triable issue of intent existed and instead weighed and resolved the intent issues." (Pl. Mem. at 7.) The Court disagrees. The Court determined that there was no evidence in the record indicating that Lowe's acted in bad faith or with an improper motive so as to create an issue of fact as to certain of WSL's claims.[3] Such a determination is entirely proper on a motion for summary judgment.[4] *See, e.g., Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir.1991) ("The fact that the defendant's state of mind is in issue does not alter the

2. The Court notes that, contrary to the parties' suggestion, its case-specific finding that there was not a severe or wanton public policy violation was not intended to impose a "severe or wanton standard" for the satisfaction of the first element of the test for CUTPA liability. (Pl. Mem. at 3–4 & n. 1; Def. Mem. at 7–8 & n. 5; Pl. Rep. at 6 & n. 2.)

3. The Court determined, in the context of WSL's fraud and tortious interference claims, that there was no basis in the record for the conclusion that Lowe's alleged non-disclosure was intended to induce the termination of WSL's leases or the relocation of tenants. (February 2, 2001 Order at 27, 31–32.) This finding was relevant to the Court's determination that any violation of the first element of

the CUTPA test was not substantial, and the second element was not satisfied. (*Id.* at 35–37.) Further, in making such determination, the Court considered the issues and facts set forth by WSL in its reply brief, which were discussed thoroughly in its opposition papers on Lowe's' summary judgment motion. (Pl. Rep. at 7–11.)

4. Contrary to WSL's contention, the Court did not find that Lowe's purported non-disclosure of stormwater management costs was intentional. (Pl. Mem. at 8) Nor does the Court's discussion of certain inconsistencies in Lowe's statements in the context of WSL's fraud claim "confirm" that the alleged non-disclosure was intentional. (*Id.* at 8–9 (citing February 2, 2001 Order at 28–29 & n. 1)).

result where only speculative allegations are offered to demonstrate the existence of state of mind after ample opportunity to engage in relevant discovery."); *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir.1989) ("[W]hile summary judgment is ordinarily inappropriate where an individual's state of mind is at issue, a denial of the motion does require that the non-moving party identify evidence that would permit the trier of fact to draw a reasonable inference of unlawful conduct."); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (stating that even where intent is at issue, to avoid summary judgment a party must produce "concrete evidence from which a reasonable juror could return a verdict in his favor"); *cf. In re Columbia Securities Litig.*, 155 F.R.D. 466, 479 (S.D.N.Y.1994) (stating, in the context of securities fraud claims, that "we may not grant summary judgment ... unless plaintiffs have failed to present facts that are capable of supporting an inference of bad faith or an inference that defendant acted with an intent to deceive"); *Waban, Inc. v. Equity Resources Servs., Inc.*, 48 F.Supp.2d 247, 249 (E.D.N.Y.1999) (granting summary judgment on affirmative defense of fraud where claimant proffered no evidence of fraudulent intent); *Ringling Bros.-Barnum & Bailey Combined Shows v. B.E. Windows Corp.*, 969 F.Supp. 901, 903–905 (S.D.N.Y.1997) (granting summary judgment on claim for accounting in Lanham Act case where there was no evidence of wilful infringement).

For the foregoing reasons, WSL's motion for reconsideration is denied.

## II. Interlocutory Appeal

The Court also denies WSL's request to modify the February 2, 2001 Order to submit the question of the proper interpretation of *Cheshire* to the Second Circuit Court of Appeals on interlocutory appeal,

pursuant to 28 U.S.C. § 1292(b). (Pl. Rep. at 13.) Interlocutory orders, such as the Order at issue here, are not ordinarily appealable. A district judge, however, may certify a civil order not otherwise appealable for interlocutory appeal if he finds and states in writing that the order "[i] involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Shah v. Wilco Sys., Inc.*, No. 99 Civ. 12054(AGS), 2000 WL 1876913, at *2 (S.D.N.Y. Dec. 22, 2000). Each of the three requirements of Section 1292(b) must be met for an order to be certified for appeal. *Shah*, 2000 WL 1876913, at *2. Here, WSL provides no rationale for its belief that the interpretation of the Connecticut Supreme Court's holding in *Cheshire* should be certified for interlocutory appeal. Moreover, while the *Cheshire* court enunciated certain rules that apply to WSL's CUTPA claim, WSL's contention that the Court overlooked certain aspects of *Cheshire's* holding in the February 2, 2001 Order does not constitute "a substantial ground for difference of opinion." *Cf. Ralph Oldsmobile*, No. 99 Civ. 4567, 2001 WL 55729, at *4 (stating that "a party that offers only arguments rejected on the initial motion does not meet the second requirement of § 1292(b)"). Further, given that WSL's breach of contract claim remains in this litigation, and will so remain regardless of the disposition of the CUTPA claim, the Court declines to find that "an immediate appeal from the [February 2, 2001 Order] may materially advance the ultimate termination of the litigation." *See In re Payroll Express Corp.*, 921 F.Supp. 1121, 1126 (S.D.N.Y.1996) ("[A]s the breach of contract claims will continue regardless of the disposition of [the] issue [on which certification was requested], cer-

tification would not materially advance the termination of this litigation."); *see also Shah*, 2000 WL 1876913, at \*2 (stating that Section 1292(b)'s certification procedure "should be strictly limited because only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after entry of a final judgment") (citations and internal quotations omitted).

SO ORDERED.